**Slip-Op. 02-141**

## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: CARMAN, CHIEF JUDGE

| | | |
|---|---|---|
| STRUCTURAL INDUSTRIES, INC., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Court No. 00-05-00203** |
| | : | |
| UNITED STATES, | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

[Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.]

*Fitch, King and Caffentzis (James Caffentzis)*, New York, New York, for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *John J. Mahon*, Acting Attorney-in-Charge, International Trade Field Office; *Jack S. Rockafellow*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Beth C. Brotman*, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, Of Counsel, for Defendant.

Dated: December 4, 2002

OPINION

**CARMAN, CHIEF JUDGE:** Plaintiff Structural Industries, Inc. ("Plaintiff") moves for summary judgment and Defendant United States ("Defendant") cross-moves for summary judgment. Plaintiff challenges the Customs Service's ("Customs") classification of frames consisting of a flat glass cover, a masonite board, and a set of four metal clips. This Court has jurisdiction to review this matter under 28 U.S.C. § 1581(a) (2000). The Court denies Plaintiff's motion for summary judgment and grants Defendant's cross-motion for summary judgment based on the reasons set forth below.

BACKGROUND

The subject merchandise is frames comprised of three components: a flat glass cover, a masonite board, and four metal clips. (Pl.'s Statement of Undisputed Facts ¶¶ 2-3; Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶¶ 2-3.) The picture or other document to be displayed is placed between the glass cover and masonite board, while the metal clips hold the document, glass, and masonite together. Plaintiff markets some or all of the subject merchandise under the name "Euro Clip." (Def.'s Statement of Undisputed Facts ¶ 2; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 2.) Plaintiff's catalog advertises the merchandise as follows: "Smooth, polished edge glass, hardboard back, and chrome clips provide a clean and unobtrusive setting for photos and artwork." (Structural Indus. Euro Clip Catalog, Def.'s Cross-Mot. for Summ. J. Attach. A (Jun. 7, 2002).) For convenience, the Court will refer to the subject merchandise as the Euro Clip.

In 1999, Customs classified and liquidated the Euro Clips under subheading 7013.99.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"), if valued not over $0.30 each, and 7013.99.50, HTSUS, if valued over $0.30 each but not over $3.00 each. (Pl.'s Mot. for Summ. J. at 1; Def.'s Cross-Mot. for Summ. J. at 4.) The duty rates were 38 percent *ad valorem* and 30 percent *ad valorem*, respectively. (*Id.*) Heading 7013 covers "glassware of a kind used for . . . indoor decoration." Plaintiff filed a protest, which was denied. (Pl.'s Summons at 1.) Plaintiff then commenced this action on May 3, 2000 after paying all the liquidated duties.

## STANDARD OF REVIEW

This Court reviews Customs' determinations *de novo*. *See* 28 U.S.C. § 2640(a)(1) (stating that in cases contesting the denial of a protest, the Court makes "its determinations upon the basis of the record before the court"). A party's summary judgment motion should be granted if the record before the Court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When determining under which of two possible classifications the merchandise falls, the Court must construe the relevant classification headings, and determine what the merchandise is. *See Bausch & Lomb Inc. v. United States*, 148 F.3d 1363, 1364-65 (Fed. Cir. 1998). The first step is an issue of law while the second is an issue of fact. *See id.* at 1365; *Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed. Cir. 1997). The Court then decides the ultimate issue of which classification the merchandise properly falls, which is a question of law. *See Bausch & Lomb Inc.*, 148 F.3d at 1365-66. In the present case, the parties agree as to what the merchandise is. This Court may

grant summary judgment "when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Id.* at 1365; *see also Brother Int'l Corp. v. United States*, No. 00-01-00007, 2002 Ct. Intl. Trade LEXIS 74, at *5-6 (Ct. Int'l Trade July 31, 2002). Therefore the Court's task is to construe the relevant classification headings and decide on summary judgment the proper classification under which the merchandise falls. *See Bausch & Lomb Inc.*, 148 F.3d at 1366.

## PARTIES' CONTENTIONS

I.      *Plaintiff's Contentions*

Plaintiff disagrees with Customs' classification of the subject merchandise under heading 7013, HTSUS. Plaintiff argues that the merchandise is properly classified under either heading 7006, 7020, or 4421, HTSUS. (Pl.'s M. for Summ. J. at 4.) Heading 7006 covers "glass . . . bent, edgeworked, engraved, drilled, enameled or otherwise worked, but not framed or fitted with other materials." Heading 7020 covers "other articles of glass." Heading 4421 covers "other articles of wood." In support of its position, Plaintiff advances two arguments.

First, Plaintiff contends that if the Court finds that the glass component provides the Euro Clip with its essential character, then the subject merchandise should be classified under heading 7006 or 7020. (*Id.*) Relying upon the General Rules of Interpretation ("GRI") accompanying the HTSUS, Plaintiff maintains that the merchandise should be classified on the basis of the component that gives the Euro Clip its essential character. (*Id.* at 5.) Assuming *arguendo* that the glass component provides the essential character, Plaintiff asserts that heading 7013 is not the proper glass classification for the subject merchandise. Plaintiff states that the glass is merely a

part of the frame and heading 7013 does not encompass parts of glass articles. (*Id.*)

Additionally, Plaintiff argues that Customs mistakenly classified the subject merchandise under a

subheading that covers certain other goods made of the same material, as the glass component

rather than classifying them based on the component providing the essential character. (*Id.* at 6.)

Plaintiff cites the *Harmonized Commodity Description and Coding System, Explanatory Notes*

(2nd ed. 1996) ("Explanatory Notes" or "EN")[1], EN 70.13 for support, arguing that the glass does

not give the whole Euro Clip the character of glass articles as required by the EN. (*Id.* at 7.)

Plaintiff further contends that the glass merely protects the image and does not give the Euro Clip

the character of a "decorative glass article" as Plaintiff says is required by EN 70.13. (*Id.* at 8.)

Plaintiff cites the language of EN 70.06 which covers "glass for photograph frames" and which

states that if the glass is set in wood and designed for framing photographs, pictures, etc., then

the article is classified under heading 44.14.[2] (*Id.*) Plaintiff reasons that but for the absence of a

border, the Euro Clip would be classified under heading 4414 according to EN 70.06, instead of

being considered "decorative" glass. If the glass is not considered "decorative" when it has a

border, Plaintiff continues, then it would not become "decorative" when the metal clips are

substituted for the border. (*Id.* at 9.) According to Plaintiff, the Euro Clip does not have the

character of glass articles because only the masonite and metal clips are absolutely necessary to

---

[1] The Explanatory Notes are the official interpretation of the scope of the Harmonized Commodity Description and Coding System, which served as the basis for the HTSUS. This Court has previously held that while the Explanatory Notes "do not constitute controlling legislative history, they nonetheless are intended to clarify the HTSUS subheadings and to offer guidance in interpreting its subheadings." *Jewelpak Corp. v. United States*, 97 F. Supp. 2d 1192, 1196 n.6 (Ct. Int'l Trade 2000) (internal citations and quotations omitted).

[2] Under the HTSUS, heading 4414 covers "[w]ooden frames for paintings, photographs, mirrors or similar objects."

display the image or document. (*Id.*)

Plaintiff's second argument is that the masonite backing of the Euro Clip gives the product its essential character and therefore the proper classification is under subheading 4421.90.98 as "other articles of wood: other: other." (*Id.* at 9-10.) Plaintiff states that the design of the masonite makes the product what it is; the masonite is cut to accept the metal clips and join all the components together. (*Id.* at 10.) The masonite is the component that allows the image to be displayed, which can be done without the protective glass cover. (*Id.*) Plaintiff refers to Customs Headquarters Ruling ("HQ") 076998 (Oct. 23, 1985), Pl.'s M. for Summ. J. Attach. 1, in which a frame with a glass cover, hardboard backing, and metal clips was classified under the Tariff Schedule of the United States ("TSUS") equivalent to subheading 4421.90.98. (*Id.*)

In conclusion, Plaintiff argues that if the Court finds that the essential character is derived from the glass component, then the proper classification of the subject merchandise is either subheading 7006.00.40, HTSUS, or 7020.00.60, HTSUS. Alternatively, if the Court finds that the masonite component provides the essential character, then Plaintiff contends the proper classification is subheading 4421.90.98, HTSUS. (*Id.* at 11.)

II.     *Defendant's Contentions*

Defendant maintains that Customs properly classified the Euro Clip under subheading 7013.99 and argues that the glass component provides the essential character to the merchandise. (Def.'s Cross-Mot. for Summ. J. at 7.) Defendant presents four arguments in support of its contention that the Euro Clip is properly classified under subheading 7013.99.

First, Defendant refers this Court to Customs' ruling in HQ 962903, Doc. No. CLA-2

RR:CR:GC 962903 BJB, 2000 U.S. Customs HQ LEXIS 192 (Apr. 18, 2000), Pl.'s Resp. To Def.'s Cross-M. For Summ. J. Attach. A, which involved merchandise that is essentially the same as the merchandise in this case. (*Id.* at 9.)  In that ruling, Customs classified that merchandise under subheading 7013.99. (*Id.* at 9-10.)  Defendant states that HQ 962903 is entitled to deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). (*Id.* (citing *United States v. Mead Corp.*, 533 U.S. 218 (2000)).)  Defendant then extensively discusses Customs' rationale and concludes that the ruling should be accorded respect and deference by the Court. (*Id.* at 9-15.)

Second, Defendant asserts that the glass component provides the essential character of the Euro Clip.  Defendant argues that the masonite provides no more actual support for the image than the glass does. (*Id.* at 16.)  Further, Defendant maintains that the masonite is not intended to have the importance of a "standard picture frame" in that it does not enhance the image or provide surrounding structural support, i.e., a border. (*Id.*)  Defendant addresses Plaintiff's "implied assertion that the glass plate is unnecessary for displaying images" by noting that the metal clips would not prevent twisting, fading, or other distortions of the image by themselves. (*Id.* at 17.)  Defendant contends the primary reason for the Euro Clip is to make a pleasing and artistic presentation of an image and cites Plaintiff's advertising for the Euro Clip as support. (*Id.* at 18.)  Defendant believes that in addition to the support it provides, the quality and protective nature of the glass are of overriding importance. (*Id.*)  For instance, Defendant presumes a scratch on the surface of the glass would affect marketability more than a scratch on the masonite. (*Id.*)

Third, Defendant contends subheading 7013.99 is the most appropriate classification and

Plaintiff has failed to demonstrate that the essential character is provided by the masonite component. In response to Plaintiff's emphasis upon the design of the masonite to accept the metal clips, Defendant notes that the masonite is but one of three interdependent parts without which the whole ceases to function. (*Id.* at 20.) Defendant states, "[T]he importance of the glass in [the] Euro Clip should not be eclipsed by the masonite merely because of the particularized role which the slots play in helping secure the metal clips." (*Id.*) Additionally, Defendant reasons that the relative value contributed by the components shows there is no significant difference between the masonite and the glass plate. (*Id.*) In response to Plaintiff's argument that the glass component is no more determinative of classification in the case of the Euro Clip than it is for frames with borders, Defendant points out that the glass is more significant in the case of these frameless or borderless holders. (*Id.* at 22.)

Fourth, Defendant argues the subject merchandise should not be classified under headings 7006 or 7020. Defendant asserts that heading 7006 excludes glass that is fitted with other materials and Plaintiff's reading of GRI 3(b) would lead to an absurd result because the glass in the present case is fitted with other materials. (*Id.* at 23.) Contrary to Plaintiff's treatment of the components as if they could each function as a separate part, Defendant states that the components are necessarily intertwined and inseparable. (*Id.*) As to heading 7020, Defendant contends that this is a catch-all provision that applies only when the merchandise does not fall under a more specific provision of Chapter 70. (*Id.*) According to Defendant, since the goods fall under heading 7013, heading 7020 does not apply. (*Id.*)

In conclusion, Defendant seeks denial of Plaintiff's summary judgment motion and a grant of its own cross-motion affirming Customs' denial of Plaintiff's protest. (*Id.*)

### DISCUSSION

I.  *Customs properly determined that the glass component of the subject merchandise provides its essential character under GRI 3(b).*

Customs must use the GRIs to classify the subject merchandise because the merchandise does not fall into any *eo nomine* provision of the HTSUS.[3]  Customs followed GRI 3(b) and determined that the glass component provides the essential character of the product.  As noted, Customs classified the subject merchandise under subheading 7013.99.40, HTSUS, if valued not over $0.30 each, and 7013.99.50, HTSUS, if valued over $0.30 each but not over $3.00 each. Heading 7013 covers "glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes."  This Court finds Customs' determination that the glass component gives the merchandise its essential character is proper.

Under GRI 2(b), "[t]he classification of goods consisting of more than one material or substance shall be according to the principles of rule 3."  GRI 2(b).  GRI 3 provides the method of classification in cases where "goods are, *prima facie*, classifiable under two or more headings."  GRI 3.  In the present case, the subject merchandise could be classified under either subheading 4421.90.98 as "other articles of wood: other" or subheading 7013.99 as "glassware of a kind used for . . . indoor decoration."  Therefore, the merchandise is *prima facie* classifiable under at least two headings.

GRI 3(a) explains that where two or more headings are potentially applicable, the more specific heading is preferred.  GRI 3(a) also states that when the headings refer to only part of the materials in composite goods, then the potential headings are considered equally specific and we

---

[3] An *eo nomine* provision is a tariff provision that describes the item by a specific name. *See Casio, Inc. v. United States*, 18 Ct. Int'l Trade 952, 954 n.4 (1994).

must proceed to GRI 3(b). GRI 3(b) provides that "composite goods consisting of different materials or made up of different components . . . shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable." GRI 3(b). When the goods cannot be classified under GRI 3(a) or (b), GRI 3(c) offers a default classification: "under the heading which occurs last in numerical order among those which equally merit consideration." GRI 3(c). The parties in this case agree that the subject merchandise are composite goods made up of different components. (Pl.'s Statement of Undisputed Facts ¶ 2; Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 2.)

The Explanatory Note to GRI 3(b) states that "[t]he factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." EN to Rule 3(b), (VIII). Beyond this interpretation of the term "essential character," there is little guidance as to the meaning of the term under the HTSUS. *See Better Home Plastics Corp. v. United States*, 916 F. Supp. 1265, 1267 (Ct. Int'l Trade 1996). In the past, this Court has turned to case law which addressed the definition of "essential character" under the TSUS for guidance. *See 3G Mermet Fabric Corp. v. United States*, 135 F. Supp. 2d 151, 158-59 (Ct. Int'l Trade 2001); *Better Home Plastics Corp.*, 916 F. Supp. at 1267. Those cases held that the essential character of an article is "that which is indispensable to the structure, core or condition of the article, *i.e.*, what it is." *Oak Laminates D/O Oak Materials Group v. United States*, 628 F. Supp. 1577, 1581 (Ct. Int'l Trade 1984) (quoting *United China & Glass Co. v. United States*, 293 F. Supp. 734, 737 (Cust. Ct. 1968); *3G Mermet Fabric Corp.*, 135 F. Supp. at 159. This "essential character" test is a fact-intensive

analysis. *See Toy Biz, Inc.*, No. 96-10-02291, 2002 Ct. Intl. Trade LEXIS 80, at *32 (Ct. Int'l Trade July 30, 2002).

In terms of the structural support to allow an image or document to be displayed, both the glass and masonite of the Euro Clip appear to be equally important. While the masonite contributes a greater amount to the total manufactured cost of the Euro Clip than the glass, the difference between the amount contributed by the masonite and glass is slight (i.e., approximately 1 percent). (Def.'s Statement of Undisputed Facts ¶ 8; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 8.) Furthermore, the relative cost of the component alone is not dispositive in light of other factors. *See Better Home Plastics Corp.,* 916 F. Supp. at 1268. The glass component in the present case serves to protect the image or document held by the Euro Clip. (Def.'s Statement of Undisputed Facts ¶ 7; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 7). It prevents the image or document from fading, twisting, being damaged, or being scratched by the metal clips or some other source. Additionally, it allows the viewer to see the image or document without distraction. The glass is the component visible to the viewer, while the masonite is covered by the image being held by the product. As noted by Defendant, due to the aesthetic function that the glass serves, a scratch on the glass is more likely to affect the marketability of the Euro Clip than a scratch on the masonite. (Def.'s Cross-Mot. for Summ. J. at 18.) After having examined all of these factors, the Court finds that Customs properly determined that the glass component provides the subject merchandise with its essential character.

II.    *Customs properly classified the subject merchandise under subheading 7013.99, HTSUS.*

Plaintiff argues that if this Court finds the glass provides the essential character, then the subject merchandise should be classified under either subheading 7006.00.40, HTSUS or 7020.00.60, HTSUS.  (Pl.'s Mot. for Summ. J. at 2.)  Subheading 7006.00.40 calls for a duty rate of 4.9 percent *ad valorem* while subheading 7020.00.60 has a duty rate of 5.3 percent or 5 percent depending on the date of entry.  Defendant claims the proper classification is under subheading 7013.99, HTSUS.  This Court holds that Customs was correct in classifying the subject merchandise under subheading 7013.99.

Subheading 7006.00.40 applies to "[g]lass of heading 7003, 7004 or 7005 bent, edge-worked, engraved, drilled, enameled or otherwise worked, but not framed or fitted with other materials: Other."  Subheading 7006.00.40, HTSUS.  In discussing glass with worked edges, EN 70.06(B) states that the heading includes "[g]lass with worked edges . . . thus acquiring the character of articles such as . . . glass for photograph frames."  EN 70.06(B).  It goes on to note that the heading "covers not only flat glass in the form of semi-finished products (e.g., sheets without any particular purpose), but also articles of flat glass designed for a specific purpose, **subject to** their being neither framed, backed, nor fitted with material other than glass."  EN 70.06.

The Court finds that the subject merchandise does not fall under Plaintiff's alternative classification of subheading 7006.00.40.  Subheading 7006.00.40 specifically excludes glass that is "framed or fitted with other materials."  "Fitted" is defined as "shaped to conform to the lines of something else."  WEBSTER'S THIRD NEW INT'L DICTIONARY 860 (1981); *see North Am. Processing Co. v. United States*, 56 F. Supp. 2d 1174, 1179 (Ct. Int'l Trade 1999) (allowing

resort to a tariff term's common and commercial meaning and reliance upon dictionaries where the term's meaning is not clearly defined by the HTSUS or legislative history). The glass in the present case is shaped to conform to the other components of the Euro Clip and is held to the masonite backing by the metal clips. Thus classification under subheading 7006.00.40 would be inappropriate.

Classification under subheading 7020.00.60 also would be inappropriate. Heading 7020 is a "basket provision" which is used only when the item is not properly classifiable under some other heading of the HTSUS. *See Pomeroy Collection, Inc.*, 2002 Ct. Int'l Trade LEXIS 57, at *20; EN 70.20 ("This heading covers glass articles . . . **not covered** by other headings of this Chapter or other Chapters"). As discussed below, this Court finds that the subject merchandise is properly classified under heading 7013 and therefore subheading 7020.00.60 does not apply.

Customs classified the subject merchandise under subheading 7013.99 as glass for indoor decoration. EN 70.13 lists examples of glass for indoor decoration, including "vases, ornamental fruit bowls, statuettes, fancy articles . . ., table-centres . . ., aquaria, incense burners, etc., and souvenirs bearing views." EN 70.13(4). Other examples listed of items falling under heading 7013 are paperweights, containers for pins, pen-trays and ashtrays, assorted table or kitchen glassware, and soap dishes and other toilet articles. EN 70.13(1)-(3). EN 70.13 notes that the articles may be of ordinary glass and/or colorless. EN 70.13. It further states "[a]rticles of glass combined with other materials (base metal, wood, etc.), are classified in this heading **only** if the glass gives the whole the character of glass articles." EN 70.13.

Plaintiff maintains in its summary judgment motion and its response to Defendant's cross-motion that the subject merchandise cannot be classified under heading 7013 because the

Euro Clip is not a "decorative glass article." (Pl.'s Mot. for Summ. J. at 8; Pl.'s Mem. in Opp'n to Def.'s Cross-Mot. for Summ. J. at 4-5.) Plaintiff asserts, "In the absence of any decorative component, classification must be based upon the primary purpose for which the [Euro Clip] is purchased. The glass cover does not provide any decoration. Neither do the other components. These articles are strictly intended for utilitarian purposes in displaying the photograph." (Pl.'s Mem. in Opp'n to Def.'s Cross-Mot. for Summ. J. at 5.) In this regard, Plaintiff challenges HQ 962903, a ruling involving products identical to the subject merchandise and which Defendant claims is entitled to deference. (*Id.* at 2; Def.'s Cross-Mot. for Summ. J. at 9-10.) In that ruling, Customs relied upon GRI 3(b) and determined that the glass component provided the essential character to the items. *See* HQ 962903, 2000 U.S. Customs HQ LEXIS 192, at *2-6, Pl.'s Resp. to Def.'s Cross-M. for Summ. J. Attach. A at 2-4. Customs then focused upon language in heading 7006 and EN 70.06 indicating that coverage by heading 7006 is subject to the article being neither framed, backed, nor fitted with material other than glass. *See id.* at *8-9, Pl.'s Resp. to Def.'s Cross-M. for Summ. J. Attach. A at 4. Customs also quoted EN 70.13 and concluded "that the EN's show that items which are composite articles having the essential character of glass articles are described by heading 7013." *Id.* at *9, Pl.'s Resp. to Def.'s Cross-M. for Summ. J. Attach. A at 5.

Plaintiff's assertion that the subject merchandise does not fall under heading 7013 is incorrect for the following reasons. First, Plaintiff fails to consider that articles with utilitarian functions are not excluded from heading 7013, and in fact many of the articles potentially falling under that classification have utilitarian functions, i.e., ashtrays, vases, soap dishes. Second, Plaintiff reads subheading 7013.99 as if it covers "decorative glass" rather than "glassware of the

kind used for . . . indoor decoration." Under GRI 3(b), for classification purposes, the composite good is treated as if it consists wholly of the component that provides its essential character. At the same time, the merchandise is to be classified based on the condition in which it is imported. *See Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994); *Sarne Handbags Corp. v. United States*, 100 F. Supp. 2d 1126,1134 (Ct. Int'l Trade 2000). The Euro Clip is imported as a complete article with three components. (Def.'s Statement of Undisputed Facts ¶ 1; Pl.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 1.) Therefore, the Court looks at whether the subject merchandise as a whole may be considered "glassware of the kind used for . . . indoor decoration." *See Pomeroy Collection, Inc. v. United States*, No. 99-02-00096, 2002 Ct. Intl. Trade LEXIS 57, at \*23-25 (Ct. Int'l Trade June 19, 2002). The classification of the plain glass, if imported separately, is irrelevant to the Court's analysis. *See id.* The Euro Clip is clearly used for indoor decoration to hold images for display. Third, as discussed earlier, the subject merchandise does not fall under Plaintiff's alternative classifications of subheading 7006.00.40 or 7020.00.60.

Based on the foregoing, the Court finds the subject merchandise was properly classified under subheadings 7013.99.40 and 7013.99.50, depending on value.

CONCLUSION

This Court finds Customs properly classified the subject merchandise under subheading

7013.99.40, HTSUS, if valued not over $.30 each, and 7013.99.50, if valued over $.30 each but

not over $3.00 each. The Court denies Plaintiff's motion for summary judgment and grants

Defendant's cross-motion for summary judgment.

_____
Gregory W. Carman
Chief Judge

Dated:
New York, New York