**CANADIAN VINYL INDUSTRIES, INC.**

v.

**UNITED STATES.**

No. 73–5–01298.

United States Customs Court.

Jan. 8, 1976.

Barnes, Richardson & Colburn, New York City (James S. O'Kelly and Michael Stramiello, Jr., New York City, of counsel) for plaintiff.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C. (Steven P. Florsheim and Carol A. Calhoun, New York City, trial attys.), for defendant.

WATSON, Judge:

This case involves an importation composed of a glossy polyurethane "skin" on one side and a nylon fabric on the reverse. The merchandise was classified as other fabrics of textile materials of man-made fibers, coated or laminated with plastic.[1] Plaintiff's principal claim[2] is for classification as flexible sheets almost wholly of plastic, made in imitation of patent leather.[3]

Plaintiff disproved the correctness of the classification by showing that the importation was not wholly or in chief value of the nylon textile material which, under general headnote 9(f)(i),[4] would be a necessary prelude to classifying this importation as "of" textile material. In fact, plaintiff proved that at the

---

1. Item 355.82 of the TSUS, as modified by T.D. 68–9, with duty assessed at the rate of 12.5 cents per pound and 15 per centum ad valorem.

2. Plaintiff's additional claims for classification under items 771.42, 774.60 and 355.85, as modified, are not reached in light of the success of plaintiff's principal claim.

3. Item 771.40 of the TSUS, as modified, with duty to be assessed at the rate of 4 per centum ad valorem.

4. The full relevant portion of general headnote 9 reads as follows:

9. Definitions. For the purposes of the schedules, unless the context otherwise requires—

\* \* \* \* \* \*

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture *of* wood", "woven fabrics, wholly *of* cotton", etc.), have the following meanings:

(i) "of" means that the article is wholly or in chief value of the named material;

(ii) "wholly of" means that the article is, except for negligible or insignificant quantities of some other material or materials, composed completely of the named material;

(iii) "almost wholly of" means that the essential character of the article is imparted by the named material, notwithstanding the fact that significant quantities of some other material or materials may be present; \* \*

time the components of this material were ready to be joined together (which is the appropriate time to determine their relative value) the cost of the nylon portion was approximately 51 cents per yard and the cost of the polyurethane portion was approximately $1.13 per yard.

This leads to consideration of whether the importation is a patent leather imitation almost wholly of plastic. The phrase "almost wholly of" is defined in general headnote 9(f)(iii) as meaning that the essential character of the article is imparted by the named material. From an examination of the exhibit representative of the importation as well as the testimony of plaintiff's witnesses, I conclude that the essential character of this material is the distinctive visual and tactile quality of the polyurethane "skin." These are the qualities which give this article its own special nature. Whatever the utility or importance of the nylon backing, the nylon portion does not supply the essential character.

Discernment of the essential character of articles is not likely to develop into an exact science but, insofar as some consistency and predictability is possible, it is likely to be found in concentrating on whether the material in question supplies the distinctive feature of the article and not in examining all the characteristics of the article and, if some other material contributes important characteristics, declining to give one material the primacy which its role deserves. General headnote 9(f)(iii) [5] acknowledges the possibility that significant quantities of some other materials may be present and implicitly recognizes that those other materials will impart something to the character of the article.

Therefore, the existence of other materials which impart something to the article ought not to preclude an attempt to isolate the most outstanding and distinctive characteristic of the article and

to detect the component material responsible for that "essential characteristic." The correct approach is exemplified in *United China & Glass Co. v. United States,* 61 Cust.Ct. 386, C.D. 3637, 293 F.Supp. 734 (1968). In that case an article composed of artificial flowers inside a glass ball was found to be almost wholly of glass.[6] In terms of the analysis I am making here, the essential character of the article was manifest in the enclosing effect of the glass ball despite the obvious importance of the artificial flowers within. Similarly, in *Larry B. Watson Co., a/c Decoration Products Co. v. United States,* 64 Cust.Ct. 343, C.D. 4001 (1970) the physical adaptability to use of a polyvinyl chloride film was held to be the essential character of the importation although an important visual characteristic was imparted by a metallic or lacquered surface treatment.

In *Marshall Co., Inc., Hoyt, Shepston & Sciaroni v. United States,* 67 Cust.Ct. 316, C.D. 4291, 334 F.Supp. 643 (1971) which involved a rayon fabric coated with rubber, I read the opinion as concluding that the article's essential character consisted of attributes of dimensional stability and a burst strength of predetermined value—both imparted by the fabric component. Classification under item 771.42 as other sheets almost wholly of rubber was therefore ruled out.

I note in passing, although it is not crucial to my analysis, that the polyurethane skin of this importation, in addition to supplying the essential visual and tactile characteristics, also contributes attributes of strength and flexibility in conjunction with the nylon backing. It is the polyurethane which is the main subject of the flexing and cracking tests to which the importation is subjected to determine its suitability for use in shoe manufacture. In this respect it is more like the fabric than the rubber coating in the *Marshall* case and is comparable to

---

5. Ibid.

6. The consequence of this finding was that headnote 1(i) of schedule 7, part 7, subpart B

acted to exclude the article from the "artificial flower" provisions of items 748.20 and 748.21.

the polyvinyl chloride film in the *Watson* case. In its contribution to the distinctive character of the importation, it is most like the glass ball in the *United China* case. In short, not only does the polyurethane skin supply the essential character of the importation, which would suffice to make the importation almost wholly of plastic, it is the dominant material in all respects.

As a final matter, I am convinced the importation is made in imitation of patent leather within the meaning of the TSUS. I reach this conclusion both from the testimony of the witnesses who were well qualified to speak authoritatively on the subject and from examination of the smooth and glossy state of the importation's surface. Defendant argues for a degree of hardness and absolute smoothness which I do not find to be a requirement for patent leather.

For the above reasons I conclude that the importation is properly classifiable as flexible sheet almost wholly of plastic, made in imitation of patent leather, under item 771.40 of the TSUS and is dutiable at the rate of 4 per centum ad valorem.

Judgment will enter accordingly.