**SPRADLING INTERNATIONAL, INC., a/k/a C.G. Spradling & Company, Inc., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 90–06–00264.

United States Court of International Trade.

Jan. 26, 1993.

Willkie Farr & Gallagher, Christopher Dunn, Vincent Bowen, Washington, DC, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Barbara M. Epstein, Jack Diamond, General Atty., U.S. Customs Service, Intern. Trade Litigation, Washington, DC, of counsel, for defendant.

## MEMORANDUM OPINION

DiCARLO, Chief Judge:

Plaintiff, Spradling International, Inc., challenges the United States Customs Service's reclassification of merchandise, resulting in the change of duties from zero to 5.3 percent. Plaintiff and defendant both move for summary judgment pursuant to Rule 56 of the rules of this court. The court has jurisdiction under 28 U.S.C. § 1581(a) (1988).

### Background

Plaintiff imported from Colombia merchandise consisting of knitted man-made fibers laminated with sheets of plastic made from polyvinyl chloride. It is designed to be used as coverings in various applications, including interior automotive linings and upholstery, marine use, furniture upholstery, and imitation leather handbags and luggage.

The merchandise was first liquidated in October 1988 under item 355.81, Tariff Schedules of the United States (TSUS), free of duty under the Generalized System of Preferences. Subsequently, Customs reclassified the merchandise under item 355.85, TSUS, at a duty rate of 5.3 percent. The reclassification stems from an internal Customs decision that such action was required by the decision of *Elbe Products Corp. v. United States*, 6 Fed.Cir. (T) 133, 846 F.2d 743 (1988) (*Elbe II*). Prior to the internal decision, merchandise identical in all material respects to the merchandise in issue was classified according to Customs Ruling 072650 (September 16, 1983) under items 355.81 and 355.82, depending on whether the plastic component constituted more than 70% of the weight of the entire article.

There is no issue of material facts in this action. The dispute is over whether the merchandise should be properly classified under item 355.81, TSUS, as of man-made fibers over 70% by weight of plastic, or item 355.85, TSUS, as other textile fabrics laminated with plastics not specifically provided for. The court rules that the proper classification of the merchandise is item 355.81.

Discussion

The primary issue presented to the court is whether non-textile components should be disregarded in determining the chief value of the merchandise classifiable under item 355.81. The pertinent provisions of the TSUS are as follows:

### SCHEDULE 3.—TEXTILE FIBERS AND TEXTILE PRODUCTS

Part 4.

Subpart C headnotes:

2. For the purposes of the tariff schedules—

. . . .

(c) the provisions in this subpart for fabrics, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics (items 355.65–.85), cover products weighing not over 44 ounces per square yard without regard to the relative quantities or value of the textile fibers and the rubber or plastics material, but do not cover products weighing over 44 ounces per square yard unless they contain more than 50 percent by weight of textile fibers.

. . . .

Woven or knit fabrics (except pile or tufted fabrics), of textile materials, coated or filled with rubber or plastics material, or laminated with sheet rubber or plastics:

| | |
|---|---|
| 355.65 | Of vegetable fibers |
| | Of cotton |
| | Of vegetable fibers, except cotton |
| 355.70 | Of wool |
| 355.75 | Of silk |
| | Of man-made fibers: |
| 355.81 | Over 70 percent by weight of rubber or plastics |
| 355.82 | Other |
| | Of strips |
| | Other |
| 355.85 | Other |

Pursuant to the General Headnotes and Rules of Interpretation of the TSUS, the term "of," as used between the description of an article and a material, means "the article is wholly or in chief value of the named material." General Headnote 9(i). And "an article is in chief value of a material if such material exceeds in value each other single component material of the article." General Headnote 10(f).

The merchandise in question consists of knit polyester laminated with sheets of plastic. The plastic component accounts for more than 50% of the value, and more than 70% of the weight, of the entire article. Thus, there is no question that the merchandise is in chief value of plastic.

The question is whether the product in chief value of plastic is classifiable under item 355.81. Prior to the decision of *Elbe II*, defendant was in agreement with plaintiff that the non-textile component should be disregarded in determining the chief value component under item 355.81; as a result the merchandise at issue was classified under item 355.81. Defendant contends, however, that *Elbe II* has overruled its previous position and mandates application of the chief value test to the whole article without disregarding any component thereof; accordingly, the merchandise at issue is properly classified under item 355.85.

I. Whether *Elbe II* is applicable

The merchandise involved in *Elbe II*, Viledon heel grips, consists of non-woven man-made fibers and rubber, with rubber as the component of chief value. Customs classified the merchandise under item 355.25 as non-woven fabrics "of man-made fibers." In making such determination, Customs disregarded the rubber portion relying on Headnote 4(b) to Schedule 3, which provides: "In determining the component fibers of chief value in coated or filled, or laminated, fabrics and articles wholly or in part thereof, the coating or filling, or the nontextile laminating substances, shall be disregarded in the absence of context to the contrary." The *Elbe II* court disagreed and stated that Headnote 4(b) applies only "where it is necessary to decide whether vegetable fiber, wool, silk, or man-made fiber is the fiber in chief value" and "the headnote is no indication that [the coating, filling or laminating substance] should be disregarded for other purposes." 6 Fed. Cir. (T) at 135, 846 F.2d at 745 (quoting *United States v. Elbe Products Corp.*, 68 CCPA 72, 77, C.A.D. 1267, 655 F.2d 1107, 1111 (1981) (*Elbe I*)). The *Elbe II* court held that, since the merchandise thereof contained only one class of fiber, Headnote

4(b) was not applicable and that the merchandise should be classified under item 359.60 as "other" textile fabrics not specially provided for.

Defendant contends that the principle of the *Elbe II* decision is applicable to the present case because the merchandise at issue is similar to that in *Elbe II* except that one contains woven fabric and the other non-woven fabric. Defendant further contends that while Customs in the past had resisted following a number of court decisions that applied the chief value test to the whole article of similar products, *Elbe II* is the first case where the two competing items were both under Schedule 3 and the court mandated application of the chief value test to the whole article. In the previous cases the competing items were between Schedule 3 (textile products) and Schedule 7 (rubber and plastics). *See Elbe I; Canadian Vinyl Indus., Inc. v. United States*, 76 Cust.Ct. 1, C.D. 4626, 408 F.Supp. 1377 (1976), *aff'd on other grounds*, 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977); *Briarcliff Clothes, Ltd. v. United States*, 66 Cust.Ct. 228, C.D. 4194 (1971).

Plaintiff argues that *Elbe II* is not applicable to the instant case because *Elbe II* does not concern the same TSUS items and headnote as the instant case. Items 355.81 and 355.85, and their controlling Headnote 2(c) of Part 4, Subpart C, of Schedule 3, have distinct provisions and legislative history, and are not at all discussed in *Elbe II*. Moreover, the decision of *Elbe II* is based on court's construction of Headnote 4(b) to Schedule 3, which has no application to this case since the merchandise at issue contains only one class of fiber (man-made fiber).

The court finds plaintiff's argument convincing. Based on the following analysis, the court holds that *Elbe II* is not applicable to the instant case.

II. Item 355.81 versus Item 355.85

1. *Statutory Provisions*

Items 355.81 and 355.85 both cover woven or knit fabrics of textile materials,

coated, filled or laminated with rubber or plastics. Item 355.81 provides for such products "of man-made fibers over 70 percent by weight of rubber or plastics," whereas item 355.85 covers "other" of such products, not specially provided for as of vegetable fibers, silk, wool or man-made fibers under items 355.65–.82.

Items 355.81 and 355.85 are both governed by Headnote 2(c) of Part 4, Subpart C, of Schedule 3, which provides: "[items 355.65–.85] cover products weighing not over 44 ounces per square yard without regard to the relative quantities or value of the textile fibers and the rubber or plastics material...." Plaintiff and defendant, however, disagree as to what this provision of Headnote 2(c) means.

According to plaintiff, the phrase "without regard to the relative quantities or value of the textile fibers and the rubber or plastics material" clearly indicates that, in determining whether a product is in chief value "of" vegetable fibers, silk, wool, man-made fibers or other materials under items 355.65–.85, the rubber and plastic components are to be disregarded. Plaintiff further contends that this interpretation is consistent with the description of item 355.81 providing for products "of man-made fibers over 70% by weight of rubber or plastics," since most of the products with such weight qualification are in chief value of rubber or plastics. If the chief value test were to be applied to the entire article without disregarding the rubber or plastic components, the coverage of item 355.81 would be limited to expensive fabrics covered by heavy and inexpensive plastic or rubber, a rather uncommon combination.

Defendant contends that the purpose of Headnote 2(c) is to provide a special weight specification and the phrase "without regard to the relative quantities or value ..." does not direct how the chief value test should be applied to the items controlled thereunder. Furthermore, defendant argues, classification of the merchandise under item 355.85 is consistent with Headnote 2(c), since item 355.85 is itself under Headnote 2(c), covering products in

chief value of materials not specially provided for by items 355.65–.82, and plastic is one of such "other" materials.

Thus, the provision of Headnote 2(c) is apparently susceptible of varying interpretation. It is unclear from the language of Headnote 2(c) whether Congress intended the product in chief value of rubber or plastics to be classifiable under items 355.-65–.85 inclusive, as product "of" specific fibers as well as of other material not specially provided for, or exclusively under item 355.85, as product of "other" material only.

### 2. *Legislative History*

Where resolution of a question of federal law turns on a statute and intention of Congress, courts look first to statutory language and then to legislative history if statutory language is unclear. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

#### (1) The 1965 Act

Item 355.81 (along with item 355.82) and Headnote 2(c) were enacted by Section 15(c) of the Tariff Schedule Technical Amendments Act of 1965, Pub.L. 89–241, 79 Stat. 933, 936. In explaining the treatment of products covered by items 355.65–.85 under the then existing tariff schedules, the House Ways & Means Committee report on the 1965 Act stated that "regardless of whether the textile fabric or the rubber or plastics is the component of chief value, the fabric is provided for in items 355.65–355.-85." H.R.Rep. No. 342, 89th Cong., 1st Sess. 11 (1965). Here, the House Report refers to items 355.65–.85 inclusively, not just item 355.85.

Most convincingly, the House Report stated the following in connection with the enactment of item 355.81:

> For several years prior to the effective date of the new schedules, *certain rayon fabrics, covered with and in chief value of rubber or plastics*, were held to be dutiable either directly or by similitude, at the rate applicable to manufactures of rubber, not specifically provided for, in paragraph 1537(b). *Item 355.81 would*

*continue for these fabrics* the rate of 12.5 percent ad valorem which had applied thereto under the old tariff schedules. However, a weight distinction would be substituted for the old chief value concept.

*Id.* at 12 (emphasis added).

This passage clearly indicates that Congress specifically intended item 355.81 to cover those products of man-made fabrics in chief value of rubber or plastics which were previously provided for under paragraph 1537(b) of the old tariff schedules effective prior to the TSUS. Paragraph 1537(b) covered manufactures of india rubber or gutta-percha, or of which any of these substances is the component material of chief value, not specially provided for. 19 U.S.C. § 1001, par. 1537(b) (1958), *repealed by* Tariff Classification Act of 1962, Pub.L. 87–456, Title I, § 101, 76 Stat. 72 (1962). Since all products provided for by paragraph 1537(b) were composed of wholly or in chief value of rubber or materials in similitude, the only logical conclusion from the above passage is that Congress intended certain of such products to be covered by item 355.81, TSUS.

(2) The 1984 Amendment

Also relevant is the legislative history of Section 111 of the Trade and Tariff Act of 1984, Pub.L. 98–573, 98 Stat. 2948, 2952, which amended Headnote 2(c) by adding the words "or value" after the phrase "without regard to the relative quantities." The amendment was prompted by court decisions in *United States v. Canadian Vinyl Indus., Inc.*, 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977), and *Elbe I*, 68 CCPA 72, 655 F.2d 1107, both of which held that products made of textile fabrics coated or laminated with rubber or plastics and in chief value of rubber or plastics should be classified under Schedule 7, instead of Schedule 3 as Customs originally determined. The Senate Report on the 1984 Act indicated that the purpose of the amendment is "to reverse the court's decisions and to restore the proper classification of these fabrics to that understood by the Customs Service and Congress prior to the decisions." S.Rep. No. 308, 98th Cong., 2d

Sess. 6 (1983), *reprinted in* 1984 U.S.C.C.A.N. 4910, 4915.

Defendant contends the 1984 amendment has no bearing on the present case because it was intended to clarify classification of certain products between Schedule 3 and Schedule 7, and hence does not instruct as to under which item within Schedule 3 such products in chief value of rubber or plastic should be classified.

The court, however, finds the legislative history of the 1984 amendment significant because one of the decisions reversed by Congress, *Canadian Vinyl*, involves interpretation of item 355.82, the twin provision of item 355.81, which was enacted by the 1965 Act to cover the same products as item 355.81 except for the percentage weight of rubber or plastics thereof. In *Canadian Vinyl*, Customs classified merchandise composed of plastic and nylon fabric, in chief value of plastic, under item 355.82. In supporting its position, Customs relied on Headnote 2(c) and related legislative history of the 1965 Act. *See Canadian Vinyl*, 64 CCPA at 102, 555 F.2d at 809. The Customs Court ruled against Customs' position on the chief value test, *Canadian Vinyl*, 76 Cust.Ct. 1, 408 F.Supp. 1377; the decision was affirmed by the Court of Customs and Patent Appeals, albeit on a different ground. *See* 64 CCPA at 106, 555 F.2d at 812.

It seems particularly significant that Congress, in discussing its intention to reverse these court decisions, did not question Customs' specific classification in these cases; rather, it clearly stated that the purpose of the amendment was to restore the proper classification understood by Customs. Furthermore, Congress reacted to the court decisions by inserting the words "or value" after the phrase "without regard to relative quantities" in Headnote 2(c), which controls items 355.65–355.85 inclusively. If Congress had intended to limit the effect of this amendment to item 355.85 exclusively, it is difficult to see why it could not have specified such limitation in the amendment.

### 3. Judicial Construction

There has been no case addressing item 355.81 directly. Nonetheless, in *Marshall Co. v. United States*, 67 Cust.Ct. 316, C.D. 4291, 334 F.Supp. 643 (1971), where merchandise composed of rayon fabric laminated with rubber was held not classifiable under items 355.65–.85 because it did not meet the weight specification under Headnote 2(c), the court consulted the legislative history of the 1965 Act, House Report No. 342, *supra*, and stated in particular that merchandise covered by items 355.65–.85 was so covered "regardless of whether the textile fabric or the rubber or plastic component was of chief value. . . ." *Id.* at 325, 334 F.Supp. at 650. By referring to items 355.65–.85 inclusive, the court's interpretation appears to be consistent with the legislative history discussed above.

Defendant cites *Briarcliff Clothes, Ltd. v. United States*, 66 Cust.Ct. 228, C.D. 4194 (1971) in supporting its position that, among items 355.65–.85, product in chief value of plastic or rubber is classifiable only under item 355.85. In *Briarcliff*, where wearing apparel in chief value of rubber was held classifiable as textile material under Schedule 3 instead of as wearing apparel of rubber under Schedule 7, the court stated: "a woven or knit fabric of textile materials laminated with rubber and in chief value of rubber is provided for under item 355.85. . . ." *Id.* at 232. The *Briarcliff* court's construction of item 355.-85, however, is not controlling in the present case because in *Briarcliff* the court applied the statute in effect prior to the 1965 Act, thereby leaving open the construction of the statute after the enactment of item 355.81 and Headnote 2(c), the very provisions at the center of dispute in this case.

### Conclusion

In view of the unambiguous legislative history of TSUS item 355.81 and its controlling Headnote 2(c) of Part 4, Subpart C, of Schedule 3, the court concludes that it is the congressional intent that non-textile component be disregarded in determining the chief value of merchandise classifiable under item 355.81. Having reached this conclusion, the court holds that since *Elbe II* does not concern or discuss item 355.81 and its controlling Headnote 2(c), the decision of *Elbe II* is not applicable in the present case. Accordingly, the court finds the subject merchandise properly classifiable under item 355.81.

Since the court has decided the primary issue of the case in favor of plaintiff, there is no need to address any additional issues raised by plaintiff.