**STRUCTURAL INDUSTRIES, INC., Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 03–1237.

United States Court of Appeals,
Federal Circuit.

Feb. 2, 2004.

James Caffentzis, Fitch, King and Caffentzis, of New York, NY, argued for plaintiff-appellant.

Jack S. Rockafellow, Attorney, Civil Division, Commercial Litigation Branch, International Trade Field Office, United States Department of Justice, of New York, NY, argued for defendant-appellee. With him on the brief were David M. Cohen, Director, United States Department of Justice, of Washington, DC; and John J. Mahon, Acting Attorney in Charge, International Trade Field Office. Of counsel on the brief was Beth C. Brothman, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, Bureau of Customs and Border Protection, United States Customs Service, of New York, NY.

Before GAJARSA, LINN, and DYK, Circuit Judges.

DYK, Circuit Judge.

This is an appeal by Structural Industries, Inc., challenging the Court of International Trade's grant of summary judgment in favor of the Bureau of Customs and Border Protection ("Customs") (formerly known as the United States Customs Service) in *Structural Industries, Inc. v. United States,* 240 F.Supp.2d 1327 (Ct. Int'l Trade 2002). We affirm the Court of International Trade insofar as it held that the goods at issue could not be classified under heading 7006 or heading 7020 of the Harmonized Tariff Schedule of the United States ("HTSUS"). However, finding that genuine issues of material fact remain as to the "essential character" of the goods at issue, and thus whether they should be classified under heading 7013 or heading 4421, we vacate the Court of International Trade's grant of summary judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

In 1999, Structural Industries imported clip frames of various sizes to the United States. Each frame consisted of three components: a flat glass cover, a masonite wood board, and a set of four metal clips. A picture or document is placed between the masonite board and glass, and the four removable metal clips insert into slits in the masonite board to secure it to the glass cover. Customs classified and liquidated these clip frames under heading 7013 of the HTSUS, which covers "[g]lassware of a kind used for table, kitchen, toilet, office, *indoor decoration* or similar purposes (other than that of heading 7010 or 7018)." HTSUS 7013[1] (emphasis added). Structural Industries protested this classification, arguing that the clip frames were improperly classified as glass for in-

door decoration and should have been classified either as "[o]ther articles of wood" under HTSUS heading 4421 or as another form of glass under heading 7006 or heading 7020. Heading 7006 includes "[g]lass of heading 7003 [cast glass and rolled glass], 7004 [drawn glass and blown glass] or 7005 [float glass and surface ground or polished glass], bent, edge-worked, engraved, drilled, enameled or otherwise worked, but not framed or fitted with other materials," HTSUS 7006, and heading 7020 is a residual basket category encompassing all "[o]ther articles of glass," HTSUS 7020. Customs rejected Structural Industries' contentions, and in May of 2000 Structural Industries protested the classification in the Court of International Trade.

On December 4, 2002, the Court of International Trade granted summary judgment in favor of Customs, upholding its classification of the clip frames under HTSUS heading 7013. The court noted that Rule 3(b) of the General Rules of Interpretation ("GRI"), which accompany the HTSUS and guide Customs in classifying imports, states that when the imported merchandise is "composite goods consisting of different materials or made up of different components ... [they] shall be classified as if they consisted of the material or component which gives them their *essential character,* insofar as this criterion is applicable," GRI 3(b) (emphasis added). The court also considered the Explanatory Note for GRI 3(b), which expounds on the concept of "essential character," stating that "[t]he factor which determines essential character will vary as between different kinds of goods" and may "be determined by the nature of the material or component, its bulk, quantity,

---

1. References to the HTSUS and the General Rules of Interpretation throughout this opinion are to the 16th edition, published on December 30, 2003. *See* HTSUS (2004), *available at* http://dataweb.usitc.gov/scripts/tariff/toc.html.

weight or value, or by the role of a constituent material in relation to the use of the goods." *Structural Indus.*, 240 F.Supp.2d at 1332 (quoting *Harmonized Commodity Description and Coding System, Explanatory Notes* ("Explanatory Notes"), Note to Rule 3(b), (VIII) (2d ed.1996)).

The Court of International Trade found that the clip frames at issue were "composite goods" governed by GRI 3(b), classifiable as either "other articles of wood" under subheading 4421 or as "glassware of a kind used for . . . indoor decoration" under subheading 7013. Finding that "the glass component provide[d] the subject merchandise with its essential character," the court held that Customs had properly classified the clip frames under subheading 7013. *Id.* at 1333. The court rejected Structural Industries' contention that the clip frames should have been classified under a glass heading other than 7013, explaining that neither of the alternative headings urged by Structural Industries was appropriate. The merchandise could not be categorized under heading 7006 because that category "specifically excludes glass that is 'framed or fitted with other materials,'" and the glass at issue was "fitted" with masonite and metal clips. *Id.* at 1334 (quoting HTSUS 7006.00.04). The court deemed heading 7020 "a 'basket pro-

vision' which is used only when the item is not properly classifiable under some other heading of the HTSUS" and explained that 7020 was inappropriate in this context because the clip frames were properly classifiable under heading 7013. *Id.*

Structural Industries appeals the Court of International Trade's decision, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). *See Pomeroy Collection Ltd. v. United States,* 336 F.3d 1370, 1371 (Fed. Cir.2003).

## DISCUSSION

We review the Court of International Trade's grant of summary judgment without deference. *Mead Corp. v. United States,* 283 F.3d 1342, 1345 (Fed.Cir.2002).

### I

Assuming arguendo that the clip frames derive their essential character from glass and should be classified as such, Structural Industries argues that the Court of International Trade erroneously upheld Customs' classification of the clip frames under 7013 as "[g]lassware of a kind used for table, kitchen, toilet, office, *indoor decoration* or similar purposes."[2] Instead, Structural Industries argues, the clip frames should have been classified as glass products under either heading 7006[3] or heading 7020.[4]

---

2. HTSUS 7013 reads as follows:

7013  7013 Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018):
. . . .
Other glassware:
. . . .
.99  7013.99 Other:
. . . .
Other:
. . . .
Other:
7013.99.40  Valued not over $0.30 each
7013.99.50  Valued over $0.30 but not over $3 each

3. HTSUS 7006 reads as follows:

7006.00  Glass of heading 7003, 7004 or 7005, bent, edge-worked, engraved, drilled, enameled or otherwise worked, but not framed or fitted with other materials:
. . . .
Other:
. . . .
.40  7006.00.40 Other:

4. HTSUS 7020 reads as follows:

7020.00  Other articles of glass:
. . . .
1.  1.  1. 7020.00.60 Other:
2.

Following the briefing in this current case we announced our decision in *Pomeroy*, 336 F.3d 1370. Although neither party saw fit to call our attention to this decision as supplemental authority, it requires rejection of all of the appellant's contentions in favor of classification under heading 7006 or 7020. In *Pomeroy*, an importer contested the classification of certain goods under 7013 as "[g]lassware used for . . . indoor decoration," arguing that the goods should have been classified as "[o]ther articles of glass" under heading 7006. *Id.* at 1371. The goods at issue in *Pomeroy* "consisted of glass vessels supported by wrought iron pedestals [that] could be used to hold candles, wine bottles, flowers, etc." *Id.* The parties in *Pomeroy* agreed that glass provided the goods their essential character, and the issue in *Pomeroy* centered on the appropriate classification of composite goods according to GRI 3(b).

■ Like the appellant in *Pomeroy*, Structural Industries contends that even if the essential character of the clip frames is glass, GRI 3(b) requires that it "be classified as [the] . . . *component* which gives [it its] essential character." GRI 3(b) (emphasis added). Therefore, Structural Industries argues that the clip frames should be classified under heading 7006 because the glass component of the frames would be classified under heading 7006 if imported alone. We reject this reasoning here just as we rejected it in *Pomeroy*, where we held that "goods must be classified in the form in which they are imported." *Pomeroy*, 336 F.3d at 1372. Although the "essential character" inquiry focuses on an individual component of the goods, the goods are not classified as though they

were composed exclusively of that component.

■ Structural Industries further argues that even if heading 7006 does not cover the clip frames, they should not be classified under heading 7013 because the Explanatory Note to that section states that "[a]rticles of glass combined with other materials (base metal, wood, etc.) are classified in this heading *only* if the glass gives the *whole* the *character* of glass articles." Explanatory Note 70.13 (second emphasis added). Structural Industries contends that this "whole character" requirement provides an extra prerequisite for classification of composite goods under heading 7013, beyond the GRI 3(b) "essential character" requirement. As such, Structural Industries urges that because the glass component of the clip frames does not meet heading 7013's "whole character" requirement, the goods should be classified under the 7020 residual basket heading for glass,[5] which does not require that glass provide the "whole character" of the product. Our decision in *Pomeroy* rejected this argument as well. We held in *Pomeroy* that "[t]he 'essential character' inquiry and the phrase 'gives the whole the character of [the] articles' do not set out different standards," *Pomeroy*, 336 F.3d at 1373 (quoting Explanatory Note 70.13) (alteration in the original), and that the "whole character" phraseology in 7013 does not "create[ ] a more restrictive standard than the 'essential character' requirement in GRI 3(b)," *id.* at 1372. Likewise, we must reject Structural Industries' argument that the clip frames cannot be classified under heading 7013 because the glass component only determines the goods' "essential character" but not its "whole character."

---

5. To the extent that Structural Industries argues that the Explanatory Notes to heading 7006 suggest classification under Heading 7020, (Br. of the Appellant at 13), we reject this argument.

## II

The fact that the goods could properly be classified under heading 7013 is not the end of the matter. Customs also agrees that the goods could properly be classified under heading 4421 as "[o]ther articles of wood," HTSUS 4421. When composite goods may be classified under multiple headings, GRI 3(b) instructs that such goods "shall be classified as if they consisted of the material or component which gives them their *essential character.*" GRI 3(b) (emphasis added). Structural Industries contends that the masonite board, rather than the glass cover, determines the clip frame's essential character, and that the goods should be classified under heading 4421.

We have established that the essential character inquiry is factual in nature. *See Pillowtex Corp. v. United States*, 171 F.3d 1370, 1376 (Fed.Cir.1999). The Court of International Trade explicitly recognized the factual character of this analysis in its decision as well. *Structural Indus.*, 240 F.Supp.2d at 1333 ("This 'essential character' test is a fact-intensive analysis."). It is also clear that the essential character inquiry involves weighing a number of diverse factors. The Explanatory Notes to GRI 3(b) state that "[t]he factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." Explanatory Note for GRI 3(b) (VIII).

At the outset, Customs maintains that its determination of the clip frame's essential character as glass, following its ruling in HQ 962903, is entitled to *Skidmore* deference, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Indeed, the Supreme Court held in *United States v. Mead Corp.*, 533 U.S. 218, 121

S.Ct. 2164, 150 L.Ed.2d 292 (2001), that Customs classification rulings, while not afforded *Chevron* deference, *see Chevron U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), may be entitled to *Skidmore* deference. *Mead*, 533 U.S. at 234–35, 121 S.Ct. 2164. Under the *Skidmore* standard articulated in *Mead*, "[a] classification ruling ... may ... at least seek a respect proportional to its 'power to persuade.'" *Id.* at 235, 121 S.Ct. 2164 (quoting *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161). *Mead* teaches that whether *Skidmore* deference should be afforded to a Customs classification ruling varies depending on "its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight." *Id.; see also Rubie's Costume Co. v. United States*, 337 F.3d 1350, 1355–56 (Fed.Cir.2003).

▪ In this case, we find that Customs' classification ruling should not enjoy deference under *Skidmore*. First, the government does not claim that Customs' classification rulings placing the clip frames or similar items within heading 7013, and determining that the goods' essential character was glass, were adopted pursuant to a "deliberative notice-and-comment ... process," *see Rubie's*, 337 F.3d at 1356 (considering the "deliberative notice-and-comment ... process" an important factor is attributing *Skidmore* deference to a particular classification ruling). Second, Customs has not followed a consistent pattern of rulings in classifying goods similar to the clip frame. Customs cites only one ruling involving Structural Industries' clip frames and a series of classification rulings where it found similar imports to have the essential character of glass. However, Structural Industries points to a prior wood heading classification, made according to the Tariff Schedules of the United States (the predecessor to HTSUS), of an

item it states was "virtually identical" to the clip frame. (Br. of Appellant at 25.) Finally, and most importantly, Customs' analysis in these rulings of an import's "essential character" is factual in nature and depends heavily on the specific characteristics of the article in question. Only one of the rulings cited by Customs concerned Structural Industries' own clip frames. A single ruling standing alone has very limited value. Essential character conclusions may well differ from imported product to imported product, and prior rulings with respect to similar but non-identical items are also of little value in assessing the correctness of the classification of a similar but not identical item. Accordingly, we find that Customs' earlier rulings are not even entitled to *Skidmore* deference.

Having rejected the claim to *Skidmore* deference, we consider whether the Court of International Trade erred in granting the government's motion for summary judgment. The Court of International Trade reasoned:

> In terms of the structural support to allow an image or document to be displayed, both the glass and masonite of the [clip frame] appear to be equally important. While the masonite contributes a greater amount to the total manufactured cost of the [clip frame] than the glass, the difference between the amount contributed by the masonite and the glass is slight (i.e., approximately 1 percent). Furthermore, the relative cost of the component alone is not dispositive in light of other factors. The glass component in the present case serves to protect the image or document held by the [clip frame]. It prevents the image or document from fading, twisting, being damaged, or being scratched by the metal clips or some other source. Additionally, it allows the viewer to see the image or document without distraction. The glass is the component visible

to the viewer, while the masonite is covered by the image being held by the product. As noted by Defendant, due to the aesthetic function that the glass serves, a scratch on the glass is more likely to affect the marketability of the [clip frame] than a scratch on the masonite. After having examined all of these factors, the Court finds that Customs properly determined that the glass component provides the subject merchandise with its essential character.

*Structural Indus.*, 240 F.Supp.2d at 1333 (internal citations omitted).

■ Structural Industries has not established that the Court of International Trade should have granted its motion for summary judgment on the ground that the "essential character" of the clip frames is determined by the masonite (*i.e.*, wood) component. However, Structural Industries also argues that the Court of International Trade improperly granted summary judgment for the government that the glass component determines the "essential character" of the clip frames because there are genuine issues of material fact. We agree.

Here various factors point in opposite directions regarding the "essential character" of the goods. The Court of International Trade's decision relies on a finding that the glass component performs an essential function in protecting the image beneath it and securing it in place. *Id.* Structural Industries argues, however, that although the glass protects the image, it is the masonite that provides essential structural support and, in fact, the masonite board and metal clips are capable of securing an image in place without the use of a glass cover. Structural Industries also points out, as the Court of International Trade recognized, that the masonite component weighs more and costs more than the glass component. Finally, the

**1372**

Court of International Trade seems to have relied heavily on its finding that "a scratch on the glass is more likely to affect the marketability of the [clip frame] than a scratch in the masonite," *id.*, but this finding merely repeats Customs' argument, and there is no evidence in the record in support of this finding. Under such circumstances summary judgment is inappropriate, and a further hearing is required.

We note that no claim has been made that the goods here should be classified under Heading 4414, which covers "[w]ooden frames for paintings, photographs, mirrors or similar objects." HTSUS 4414. That claim, therefore, has been waived in this particular case. We are not, however, resolving this question for future cases, and it may well be that goods of the character involved here should properly be classified under Heading 4414.

CONCLUSION

For the foregoing reasons, we vacate the Court of International Trade's grant of summary judgment in favor of Customs and remand the case for further proceedings.

VACATED AND REMANDED.

COSTS

No costs.