**Slip-Op. 05-21**

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN

|  |  |  |
|---|---|---|
| STRUCTURAL INDUSTRIES, INC., | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Court No. 00-00203** |
| | : | |
| UNITED STATES, | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

[After remand from the Court of Appeals for the Federal Circuit, an evidentiary hearing, and review of the evidence, papers and arguments submitted by the parties, judgment is entered for Plaintiff as to the tariff classification of certain clip frames. Defendant is directed to reliquidate the subject merchandise in accordance with this opinion.]

*Fitch, King and Caffentzis (James Caffentzis)*, New York, New York, for Plaintiff.

*Robert D. McCallum, Jr.*, Assistant Attorney General; *John J. Mahon*, Acting Attorney-in-Charge, International Trade Field Office; *Jack S. Rockafellow*, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice; *Beth C. Brotman*, Attorney, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, Of Counsel, for Defendant.

Dated: February 15, 2005

## OPINION

**CARMAN, JUDGE:** This case is before this Court pursuant to a remand ordered by the United States Court of Appeals for the Federal Circuit ("CAFC"). *Structural Industries, Inc. v. United States*, 356 F.3d 1366 (Fed. Cir. 2004).[1] The tariff classification of certain clip frames is at issue in this case. Structural Industries, Inc. ("Plaintiff") challenges the United States Customs Service's[2] ("Customs" or "Defendant") classification of the subject merchandise under heading 7013 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1999)[3]. 19 U.S.C. § 1202 (2000). Based upon findings of fact and conclusions of law set forth below, the Court enters final judgment for Plaintiff.

## BACKGROUND

The subject merchandise is frames comprised of three components: a flat glass cover, a masonite back, and four metal clips. (Pl.'s Statement of Material Facts ¶¶ 2-3; Def.'s Resp. to Pl.'s Statement of Material Facts ¶¶ 2-3.) An image, which could be a photograph, picture, or other flat item (*e.g.*, a document), is placed between the glass cover and masonite back. (Def.'s Statement of Undisputed Material Facts ¶¶ 3-4.) The metal clips, which fit into grooves cut into

---

[1]Familiarity with this opinion is presumed.

[2]The United States Customs Service is now part of the Department of Homeland Security and is known as the Bureau of Customs and Border Protection.

[3]The Court notes that the subject merchandise was entered into the customs territory of the United States during the years 1998 and 1999. As no changes were made to the HTSUS tariff items under consideration during the period at issue, the Court refers only to the 1999 HTSUS for simplicity.

the masonite back (Br. for Structural Industries, Inc., Pl. ("Pl.'s Br.") at 10), hold the image, glass, and masonite together. Plaintiff markets some or all of the subject merchandise under the name "Euro Clip." (Def.'s Statement of Undisputed Material Facts ¶ 2; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 2.) For convenience, this Court refers to the subject merchandise as the Euro Clip.

In 1999, Customs liquidated the Euro Clip under HTSUS tariff item 7013.99.40[4], if valued not over $0.30 each, and 7013.99.50, if valued over $0.30 each but not over $3.00 each. (Pl.'s Br. in Supp. of Its Mot. for Summ. J. at 1; Mem. in Supp. of Def.'s Cross-Mot. for Summ. J. at 4.) The assessed duty rates were 38 percent *ad valorem* and 30 percent *ad valorem*, respectively. *(Id.)*

Plaintiff filed a protest concerning the classification of the Euro Clip, which Customs denied, and Plaintiff commenced litigation. (Pl.'s Summons at 1.) After considering the parties' briefs, this Court denied Plaintiff's motion for summary judgment and granted Defendant's cross-motion for summary judgment. *Structural Industries, Inc. v. United States*, 240 F. Supp. 2d 1327 (CIT 2002)[5] ("*Structural I*"), *rev'd and remanded, Structural Industries, Inc. v. United States*, 356 F.3d 1366 (Fed. Cir. 2004). The CAFC remand mandate directed this Court to hold a hearing on the essential character of the subject merchandise. *Structural Industries*, 356 F.3d at 1372.

This Court held an evidentiary hearing on November 10, 2004, during which each party presented one witness. Jamie Hirsh, president of Structural Industries, Inc., testified on behalf of

---

[4]HTSUS heading 7013 covers "glassware of a kind used for . . . indoor decoration."

[5]Familiarity with this case is presumed.

Plaintiff. (Tr. 18-99.) Kelly Egan, a fact witness with experience in the framing industry, testified on behalf of Defendant. (Tr. 99-154.) At the Court's request, the parties submitted post-hearing concurrent briefs on the issue of the classification of the Euro Clip. Having reviewed the evidence presented at the hearing and the parties' briefs and for the reasons following, this Court now holds that wood is the essential character of the Euro Clip. The correct classification of the Euro Clip is 4414.00.00.

## AGREED FACTS

Prior to the evidentiary hearing, the parties submitted a Pre-Trial Stipulation ("PT Stip.") of agreed facts. Some relevant facts are reiterated here for convenience:

1. The imported merchandise is to be classified under [HTSUS] General Rule of Interpretation 3(b) as if it consisted of the material or component that gives it its essential character. (PT Stip. ¶ 1.)

2. The subject clip frames are composite goods made up of different components. (*Id.* at ¶ 2.)

3. The height and width dimensions of the glass cover and the masonite back are approximately the same. (*Id.* at ¶ 5.)

4. Plaintiff markets the imported merchandise as Euro Clip frames or clip frames. (*Id.* at ¶ 6.)

5. The articles are accurately described, among other descriptions which may [be] equally accurate, as "picture holders." (*Id.* at ¶ 7.)

6.    These picture holders may also be used to display documents or other images.  (*Id.* at ¶ 8.)

7.    Other than the metal clips, the articles do not have a border.  (*Id.* at ¶ 9.)

8.    The glass covers (*id.* at ¶ 10) and protects (*id.* at ¶ 11) the photograph or other image placed in the Euro Clip.

9.    For the three sizes of Euro Clip at issue, the cost breakdown of the components is as follows:

a)    4"x6": masonite back – 25.3%; glass cover – 24.5%; metal clips – 50.2%;

b)    8"x10": masonite back – 34.3%; glass cover – 33.1%; metal clips – 32.6%;

c)    11"x14": masonite back – 37.7%; glass cover – 36.4%; metal clips – 25.9%.

(*Id.* at ¶ 12.)

10.   The masonite back is classifiable under HTSUS heading 4421.  (*Id.* at ¶ 14.)

11.   The glass cover is classifiable under HTSUS heading 7006.  (*Id.* at ¶ 15.)

### PARTIES' CONTENTIONS

I.    Plaintiff's Contentions

Plaintiff submits that on the basis of GRI 3(b) the whole of the subject merchandise is classified as if it consisted solely of the element providing the essential character.  (Pl.'s Br. at 2 (citing *Better Home Plastics Corp. v. United States*, 119 F.3d 969 (Fed. Cir. 1997); *The Pomeroy*

*Collection, Ltd. v. United States*, 336 F.3d 1370 (Fed Cir. 2003)).) Plaintiff suggests four

possible alternative HTSUS tariff classifications for the Euro Clip:

1. 4414.00.00 (Pl.'s Br. at 2, 6): Wooden frames for paintings, photographs, mirrors or similar objects;

2. 7326.90.85 (*id.* at 2): Other articles of iron or steel: Other: Other;

3. 8306.30.00 (*id.* at 3, 6, 13): Bells, gongs and the like, nonelectric, of base metal; statuettes and other ornaments, of base metal; photograph, picture or similar frames, of base metal; mirrors of base metal; and base metal parts thereof: Photograph, picture or similar frames; mirrors; and parts thereof; and

4. 4421.90.98 (*id.* at 2, 6. 13): Other articles of wood: Other: Other: Other.

Plaintiff's primary argument is that the masonite back provides the essential character of

the Euro Clip. (*id.* at 2, 11.) Plaintiff supports this contention by pointing out that

1. The masonite back is thicker than the glass (*id.* at 4);

2. The Euro Clip cannot be used for its intended purpose without the masonite back (*id.* at 5);

3. The masonite back prevents the image from twisting (*id.*);

4. The masonite back is indispensable to the structure and function of the Euro Clip (*id.* at 9); and

5.    The masonite back makes the product what it is because it has four slots cut, sized, and aligned in the exact manner to accept the metal clips, which join the components (*id.* at 10).

Upon establishing that wood is the essential character of the Euro Clip, Plaintiff contends that the whole is correctly classified as a frame of wood, or wooden frame, under tariff item 4414.00.00. (*Id.* at 2.) Plaintiff suggests that the Euro Clip, with the essential character of wood, should be classified as a wooden frame because

1.    Plaintiff markets the Euro Clip as a "clip frame" (*id.* at 3);

2.    The Euro Clip is designed to be hung on a wall, either vertically or horizontally (*id.* at 4);

3.    The Euro Clip is intended to display a photograph or other image in the manner of a frame (*id.* at 3, 4);

4.    The industry recognizes many types of frames, not all of which have borders on four sides (*id.* at 5);

5.    The Euro Clip is displayed and sold in retailers' frame departments. (*id.*); and

6.    The Euro Clip competes (for sales) with other (more traditional) types of frames (*id.*).

Plaintiff alternatively argues that if wood is not the essential character of the Euro Clip then the subject merchandise should be classified based on the essential character being the metal clips (HTSUS 7326.90.85). (*Id.* at 2.) To support the alternate theory of classification, Plaintiff

points out that the clips are the only other component (together with the masonite back) necessary for the intended function of the subject goods (*id.* at 9).

If the metal clips provide the essential character of the Euro Clip, Plaintiff also suggests that the subject merchandise may be classified as metal frames under HTSUS tariff item 8306.30.00. (*Id.* at 3.) According to Plaintiff, the marketing name "clip frame" "highlights the significance and importance of the metal clips" (*id*), and the Euro Clip satisfies the tariff meaning of the term "picture frame" of base metal (*id.*).

II.     Defendant's Contentions

Defendant asserts that the essential character of the Euro Clip is the glass front (Def.'s Proposed Findings of Fact and Post-Trial Br. ("Def.'s Br.") at 10) and defends the classification of the subject merchandise as liquidated – HTSUS tariff item 7013.99.40 or 7013.99.50, depending on value. As support for its contention that the glass component provides the essential character of the subject merchandise, Defendant points to the following information:

1.      The glass element is heavier than the masonite back;

2.      The glass element adds rigidity;

3.      The glass helps prevent the masonite back from warping;

4.      The glass protects the image from UV light, humidity, dirt, and oils;

5.      The glass allows the image to be seen without distraction; and

6.      The glass provides structural support.

*Id.* at 18. According to Defendant, the essential character analysis tilts in favor of the glass component due to consumer expectation. (*Id.* at 17.) Defendant states that "the quality, design, purpose, and cut of the glass make it indispensable to the holders and makes it central to the product's appeal to the viewer." (*Id.* at 18.) Defendant also deems that the masonite back is not visible to the viewer as an important factor in the essential character analysis. (*Id.* at 21.)

Defendant further argues that the Euro Clip cannot be classified as a "wooden frame" in HTSUS heading 4414 because it lacks a wood border surrounding the image. (*Id.* at 12.) However, Defendant suggests that Euro Clip is a "glass frame." (*Id.* at 13 n.10, 17.) Thus, it should be classified as such in HTSUS heading 7013. (*Id.* at 13 n.10.)

Lastly, Defendant appeals to this Court to apply GRI 3(c) in classifying the Euro Clip if the Court cannot otherwise find that glass imparts the essential character. (*Id.* at 21.) According to Defendant, as between the two components of the Euro Clip requiring equal consideration, the glass front and masonite back, Defendant points out that the classification of the glass cover appears last in numerical order in the HTSUS. (*Id.* at 22.) Thus, classification in that tariff provision would be required by GRI 3(c). (*Id.*)

## DISCUSSION

Tariff classification is governed by the HTSUS General Rules of Interpretation ("GRI"). *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998). GRI 3 governs the classification of goods that are classifiable under two or more headings, which this Court in *Structural I* determined the Euro Clip to be. *Structural I*, 240 F. Supp. 2d at 1332. The CAFC

did not disagree with this finding. According to GRI 3(b), "[m]ixtures, composite goods consisting of different materials or made up of different components, . . . shall be classified as if they consisted of the material or component which gives them their *essential character* . . . ." (emphasis added).

The "essential character" of an article is "that which is indispensable to the structure, core or condition of the article, i.e., what it is." *United China & Glass Co. v. United States*, 61 Cust. Ct. 386, C.D. 3637, 293 F. Supp. 734, 737 (1968).[6] Further, "the existence of other materials which impart something to the article ought not to preclude an attempt to isolate the *most outstanding and distinctive characteristic* of the article . . . ." *Canadian Vinyl Indus., Inc. v. United States*, 76 Cust. Ct. 1, 3, C.D. 4626, 408 F. Supp. 1377, 1378 (1976) (emphasis added).

In addition, the Harmonized Tariff System Explanatory Notes ("EN"), while not binding on the Court, may be instructive and helpful in determining the scope and interpretation of tariff terms. *Len-Ron Mfg. Co., Inc. v. United States*, 334 F.3d 1304, 1309 (Fed. Cir. 2003). According to the EN, the factor that determines the essential character of an article will vary between different goods. Harmonized Commodity Description and Coding System, *Explanatory Notes*, Rule 3(b), Vol. 1, p.4 (3d ed. 2002). Essential character may "be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods." *Id.*

---

[6]Although this definition of "essential character" applied to the predecessor to the HTSUS – the Tariff Schedule of the United States (TSUS), later courts have been guided by TSUS cases that interpreted tariff terms substantially similar those found in the HTSUS. *Cf. Better Home Plastics Corp. v. United States*, 20 CIT 221, 224, 916 F. Supp. 1265, 1267 (1996); *Toy Biz, Inc. v. United States*, 219 F. Supp. 2d 1289, 1301 (CIT 2002).

None of the factors is conclusive, and the list set forth in the EN is not exhaustive. It is the responsibility of this Court to consider the totality of the evidence put before it in making its ruling. Thus, determining the essential character of an article requires a fact-intensive analysis. *Toy Biz, Inc. v. United States*, 219 F. Supp. 1289, 1301 (CIT 2002).

In every tariff classification decision, it is this Court's imperative to reach the correct result, regardless of the competing tariff items put forward by the parties. *See Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984). A classification decision requires two steps. *Orlando Food Corp.*, 140 F.3d at 1439. The first step is for the court to discern the proper meaning of tariff provisions. *Id.* The second step is for the court to determine the particular tariff provision into which the subject goods fall. *Id.* In the instant matter, this analysis requires this Court to, first, determine the essential character of the Euro Clip and, second, decide the correct tariff classification for the goods.

I.      *The metal clips do not provide the classification of the Euro Clip.*

Neither party argues convincingly that the metal clips should be regarded as the essential character of subject merchandise, and the court does not find *sua sponte* reason to do so. While this Court recognizes that each component of the Euro Clip is necessary for the article to serve its intended function, that fact does not preclude a finding that one component represents the essential character of the good. "[T]he existence of other materials which impart something to the article ought not to preclude an attempt to isolate the most outstanding and distinctive

characteristic of the article and to detect the component material responsible for that 'essential characteristic.'" *Canadian Vinyl*, 76 Cust. Ct. at 3, 408 F. Supp. at 1378.

Although the name of the subject merchandise would suggest the relevance of the clips, the product is not identified by them, but rather is identified and used as a frame or image holder. In fact, Defendant offers and this Court accepts that the manner by which the Euro Clip is held together is not important to the essential character analysis. (Def.'s Br. at 19 (citing EN 70.13, 70.06).) Further, the bulk and weight of the clips are clearly less than that of the glass and masonite back. Although the cost of the clips for the small (4" x 6") frame is greater than that of the glass and masonite back, this Court has previously recognized that, while it takes the relative cost of component parts into consideration, cost alone is not dispositive and may not be persuasive in light of competing arguments. *Better Home Plastics*, 20 CIT at 225, 916 F. Supp. at 1268. Based on the totality of the evidence before it, this Court finds that the contribution of the metal clips is not significant enough to impart the essential character of the Euro Clip.

II. *The glass cover does not impart the essential character of the Euro Clip.*

According to the EN, "[a]rticles of glass combined with other materials (base metal, wood, etc.) are classified in [HTSUS heading 7013] **only** if the glass gives the whole the character of glass articles." EN, Heading 70.13, Vol. 3, p.1168 (emphasis original). The "essential character" standard and the "whole character" standard stated in the EN are the same. *Pomeroy*, 336 F.3d at 1373. Contrary to the position Defendant suggests, the glass cover also does not provide the Euro Clip's essential character.

This Court finds most significant that the Euro Clip can function without the glass cover. While the image displayed may suffer some damage or curling, the Euro Clip could nonetheless be used to display an image on a wall – its primary purpose – without the glass cover.[7] If the subject merchandise can be used appropriately and adequately without one of its components, this Court is not convinced that the nonessential component – in this instance, the glass – may impart the essential character of the article.

Defendant placed great emphasis on the possibility that the masonite back may warp and render the Euro Clip unusable. This Court is not swayed by this argument. The glass is at least equally, if not more, prone to damage from breakage or scratches that might also diminish the usefulness of the Euro Clip. Defendant also pointed out the UV protection that the glass provides. The primary function of the Euro Clip is to display an image rather than protect it from sunlight. Thus, this argument, too, is not persuasive. The Court also considered that, although perhaps slightly heavier than the masonite back, the glass is thinner.

In light of these factors, the Court concludes that the glass, too, does not provide the essential character of the Euro Clip.

III.     *The masonite back is the essential character of the Euro Clip.*

This Court finds that the masonite back imparts the essential character of the Euro Clip. Without the masonite back, the Euro Clip could not perform its primary objective: to display

---

[7]During the evidentiary hearing, Plaintiff presented exhibits – Plaintiff's Exhibits 4R and 5R – as examples of how the Euro Clip might be used without the glass cover.

images on a wall. The masonite back, thus, provides the core or structure of the subject merchandise. *See United China*, 61 Cust. Ct. at 389, 293 F. Supp. at 737. The masonite back is distinctive in that it is designed specifically to accommodate the metal clips; it has grooves cut in the back into which the clips fit. In this way, the masonite back is indispensable to the structure and function of the Euro Clip. However, even without the clips, the masonite back might be used to display images if such were affixed by another means (*i.e.*, with tape, glue, or other adhesive).

Further, the masonite back provides the stability, support, and rigidity necessary to meet the article's purpose and prevent the image from twisting. In addition, the masonite back has more bulk than the glass, in that it is thicker, and it certainly has more bulk than the clips. For the two larger size frames, the masonite back also represents the greatest value component of the Euro Clip.[8]

Because the masonite back is the only component indispensable for the Euro Clip to perform its intended function and because it provides necessary support and stability for the Euro Clip to be used to display images, this Court deems the masonite back as the essential character of the subject goods.

---

[8]This Court acknowledges Defendant's suggestion that the full value of the glass component is not included in the cost breakdown provided to the court. (Def.'s Br. at 4, ¶ 13.) However, because value is only one of the factors weighing in favor of the masonite back as the essential character and not the determinate factor, this Court is relying on the only specific cost data before it.

IV.    *The Euro Clip is properly classified in tariff item 4414.00.00.*

Having decided that the essential character of the Euro Clip is the masonite back, the Court must now determine under which tariff provision of HTSUS chapter 44 the subject merchandise is properly classified.  Tariff items 4414.00.00 (wooden frames for paintings, photographs, mirrors or similar objects) and 4421.90.98 (other articles of wood: other: other: other) are under consideration.

Once the essential character of an article has been determined, the whole of the article is to be classified as if it consisted of the element that imparts the essential character.  *See Better Home Plastics*, 20 CIT at 226, 916 F. Supp. at 1268.  In *Pomeroy,* the court determined that a glass insert provided the essential character of the composite good in question (an iron pedestal with a glass insert).  *Pomeroy,* 336 F.3d 1370.  The plaintiff argued that the composite good should be classified as the glass insert would be classified if imported separately.  *Id.* at 1372.  The court rejected the plaintiff's argument and stated that "the goods were imported as functional lamps, not nonfunctioning glass vessels.  And . . . goods must be classified in the form in which they are imported. . . ."  *Id.* (emphasis added) (internal citations omitted).  In further clarifying *Pomeroy*, the CAFC stated that "[a]lthough the 'essential character' inquiry focuses on an individual component of the goods, the goods are not classified as though they were composed exclusively of that component."  *Structural Industries*, 356 F.3d at 1369.

This Court adopts the reasoning in *Pomeroy*.  The Euro Clip is imported not as a piece of wood that – imported alone – would be classifiable in HTSUS heading 4421.  Rather, the Euro Clip is imported as a finished article that is on its whole a frame.

The common meaning of a tariff term is a question of law to be decided by the court. *Schott Optical Glass, Inc. v. United States*, 11 CIT 899, 905, 678 F. Supp. 882, 887 (1987), *aff'd* 862 F.2d 866 (Fed. Cir. 1988) (citing *Schott Optical Glass, Inc. v. United States*, 82 Cust. Ct. 11, 16, C.D. 4783, 468 F. Supp. 1318, 1321 (1979)). When construing tariff terms, the court may look to common and commercial meanings. *The Mead Corp. v. United States*, 283 F.3d 1342, 1346 (Fed. Cir. 2002). To ascertain the common meaning of a tariff term, the court may refer to dictionaries, scientific authorities, and similarly reliable resources. *Id.* A "frame" is defined as (1) "[s]omething composed of parts fitted and joined together," or (2) "[a] structure that gives shape or support." *The American Heritage Dictionary of the English Language* 720 (3rd ed., Houghton Mifflin Co. 1996). Similarly, a "frame" is "something composed of parts fitted together and united." *Webster's New Collegiate Dictionary* 452 (8th ed., G. & C. Merriam Co. 1981).

The Euro Clip is a combination of three parts fitted together by metal clips to form something, namely an article by which images are displayed. Further, the Euro Clip gives support to the image being displayed and defines the shape by limiting the size of the image based on the size of the glass and masonite components. For these reasons, this Court finds that the Euro Clip is consistent with the common meaning of the term "frame."

Although an importer's marketing of an imported item does not dictate its classification, it is relevant to the proper classification. *Mead*, 283 F.3d at 1349. The Euro Clip is marketed as a clip frame. Further, it is sold by retailers in the same department as more traditional (bordered) frames. It is also used by consumers in the manner of a frame to display art, photographs,

documents, or other images. This Court finds these factors persuasive and indicative that the common and commercial meanings of the tariff term "frame" encompass the Euro Clip.

This Court finds disingenuous Defendant's argument that the Euro Clip is analogous to a glass frame but not to a wood frame. (Def.'s Br. at 13 n.10.) By Defendant's definition of a frame, the border, or surround, would determine the article's classification. Because the Euro Clip does not have a border, it is no more analogous to a glass frame than a wood one. However, that does not change the Court's position that the Euro Clip with the essential character of wood is properly classified in HTSUS heading 4414.

### CONCLUSION

For the reasons stated herein, this Court finds that the proper classification of the Euro Clip is 4414.00.00. Accordingly, this Court directs Customs to reliquidate the entries subject to this litigation consistent with this ruling.

/s/        Gregory W. Carman
Gregory W. Carman
Judge

Dated: February 15, 2005

New York, New York