**Slip Op. 05-101**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                        :
CARGILL CITRO-AMERICA, INC.             :
                                        :
         Plaintiff,                     :
                                        :
         v.                             :          Court No.
                                        :          03-00348
UNITED STATES,                          :
                                        :
         Defendant.                     :
_____:

[Plaintiff's motion for summary judgment is granted.  Defendant's cross-motion for summary judgment is denied.]


Dated: August 23, 2005

    Neville Peterson LLP (John M. Peterson) for Cargill Citro-America, Inc., plaintiff.

    Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney-in-Charge, International Trade Field Office, Mikki Graves Walser, Commercial Litigation Branch, Civil Division, United States Department of Justice; of counsel: Chi S. Choy, Office of the Assistant Chief Counsel, Bureau of Customs and Border Protection, for the United States, defendant.


## OPINION

    **TSOUCALAS, Senior Judge**: Plaintiff, Cargill Citro-America, Inc. ("Cargill") moves pursuant to USCIT R. 56 for summary judgment on the ground that there is no genuine issue as to any material facts.  Cargill argues that its claim for substitution unused merchandise drawback with respect to certain exported frozen concentrated orange juice for manufacturing ("FCOJM") should be

granted. The Bureau of Customs and Border Protection ("Customs")[1] cross-moves for summary judgment seeking an order dismissing the case. Customs argues that the drawback claim was properly denied.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a) (2000).

## STANDARD OF REVIEW

On a motion for summary judgment, the Court must determine whether there are any genuine issues of fact that are material to the resolution of the action. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if it might affect the outcome of the suit under the governing law. See id. Accordingly, the Court may not decide or try factual issues upon a motion for summary judgment. See Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988). When genuine issues of material fact are not in dispute, summary judgment is appropriate if a moving party is entitled to judgment as a matter of law. See USCIT R. 56; see also Celotex Corp. v.

---

[1] The United States Customs Service was renamed the Bureau of Customs and Border Protection of the Department of Homeland Security, effective March 1, 2003. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 1502, 116 Stat. 2135 (2002); Reorganization Plan for the Department of Homeland Security, H.R. Doc. No. 108-32 (2003).

Catrett, 477 U.S. 317, 322-23 (1986).


**DISCUSSION**

## I.   Factual Background

Cargill is a United States importer, producer, and exporter of citrus products, including FCOJM.  See Compl. ¶ 5.  On May 30, 1997, Cargill filed a claim for substitution unused merchandise drawback, pursuant to 19 U.S.C. § 1313(j)(2) (1994), with the Customs Drawback Center in San Francisco.  See Compl. ¶ 6.  The claim covered 8,422,861 single strength liters ("SSL") of FCOJM which Cargill exported to China, South Korea and Japan between December 31, 1996, and April 30, 1997.  See Compl. ¶ 7.  A portion of the drawback claim, 3,733,072 SSL, was based on FCOJM imported by The Coca Cola Company under Consumption Entry No. 032-0197172-2, on September 8, 1994.  See Def.'s Opp'n Pl.'s Mot. Summ. J. Cross-Mot. Summ. J. ("Customs' Mem.") Ex. 2.  On March 7, 1997, Cargill received from The Minute Maid Company ("Minute Maid"), a division of The Coca Cola Company, the 3,733,072 SSL of FCOJM.  See Pl.'s R. 56(i) Statement Material Facts Not Dispute ("Cargill's Facts") ¶ 5.  The delivery of this FCOJM was documented by a certificate of delivery issued by Minute Maid on September 8, 1997 ("Minute Maid CD").  See Customs' Mem. Ex. 2.  The 3,733,072 SSL of FCOJM was not the same merchandise which had been imported on September 8, 1994.  See Cargill's Facts ¶ 8; Customs' Mem. Ex. 2.

On August 31, 1999, San Francisco Customs requested information and records from Minute Maid with respect to the Minute Maid CD. See Customs' Mem. Ex. 2. In response, Minute Maid submitted documents showing that it had transferred commercially interchangeable FCOJM imported in 1997 to Cargill along with drawback rights originating from FCOJM it had imported in 1994. See id. San Francisco Customs believed that a "'double substitution' occurred when Cargill subsequently exported its domestic substituted FCOJM and designated the 1994 imports listed in the certificate of delivery." Customs Mem. Ex. 3. Accordingly, San Francisco Customs sought internal advice from Customs Headquarters because it believed that substitution occurred at the time Minute Maid delivered the FCOJM to Cargill in March 1997. See id.

On February 12, 2002, Customs Headquarters issued Headquarter's Ruling Letter ("HQ") 228706 directing the San Francisco Port Director to deny Cargill's drawback claim. See Cargill's Facts Ex. B. On February 27, 2002, the drawback claim at issue was liquidated and drawback with respect to the duty-paid on the 3,733,072 SSL of FCOJM was denied. See Compl. ¶ 11. Cargill timely filed a protest claiming that it could perfect its drawback claim. See Compl. ¶ 12. In May 2003, Customs denied Cargill's protest and Cargill commenced the present action. See Compl.

## II.  Statutory Background

Under the relevant drawback statute, Customs will fully repay, less one percent, the amount of duties paid upon goods previously imported into the United States and used in the manufacture or production of "commercially interchangeable" merchandise which is subsequently exported or destroyed.  See 19 U.S.C. § 1313(j)(2). Prior to exportation or destruction, however, the merchandise may not be used within the United States and such merchandise must be in the possession of the party claiming a drawback.  See 19 U.S.C. § 1313(j)(2)(C).  Moreover, the drawback claimant must have "received from the person who imported and paid any duty due on the imported merchandise a certificate of delivery transferring to the party the imported merchandise, commercially interchangeable merchandise, or any combination of imported or commercially interchangeable merchandise . . . ."  Id.

To be eligible for drawback, the claimant must demonstrate compliance with 19 C.F.R. pt. 191 (1997), which sets forth provisions applicable to all drawback claims.  A "drawback claim" is defined under Customs' regulations as "the drawback entry and related documents required by [the] regulations which together constitute the request for drawback payment."  19 C.F.R. § 191.2(i).  Pursuant to Customs' regulations, a party seeking to export merchandise with drawback rights under 19 U.S.C. § 1313(j)

must file a completed entry summary. See 19 C.F.R. § 191.141(b). The claimant must identify the import entry, as well as the date and port of entry. See id. The claimant is also required to certify that the merchandise was in the same condition as when it was imported and not used within the United States prior to exportation or destruction. See id. Transfers of the merchandise "shall be documented by certificates of delivery (see § 191.65)." Id. A claimant must file Customs Form 331 ("CF 331"), entitled "Manufacturing Drawback Entry and/or Certificate," when the merchandise exported or destroyed was not imported by the drawback claimant. See 19 C.F.R. § 191.65(a). In such instances, the drawback claimant's CF 331 "must describe the merchandise delivered, tracing it from the custody of the importer to the custody of the manufacturer." Id. Furthermore, "[i]f the merchandise was not delivered directly from the importer to the manufacture, each intermediate transfer shall be described on" the CF 331. 19 C.F.R. § 191.65(b).

On April 6, 1998, new regulations took effect with respect to the transfer of imported merchandise on which duty had been paid. See 19 C.F.R. § 191.10 (1998). Under the new regulations, if the importer, pursuant to 19 U.S.C. § 1313(j)(2), transfers to another party imported merchandise, commercially interchangeable merchandise or any combination thereof, then the transferor must

record the transfer by issuing to the transferee a certificate of delivery covering the transferred merchandise. See 19 C.F.R. § 191.34(b). Moreover, the certificate of delivery "must expressly state that it is prepared pursuant to 19 U.S.C. § 1313(j)(2)." Id. The regulations provide that each transfer of the imported merchandise, commercially interchangeable merchandise, or combination thereof "must be documented by its own certificate of delivery." Id. The certificate of delivery must, inter alia, include the import entry number and provide a description of the merchandise delivered to the party asserting a drawback claim. See 19 C.F.R. § 191.10. The regulations state that the certificate of delivery documents the transfer of the merchandise, identifies "such merchandise or article as being that to which a potential drawback exists." Id. Furthermore, the certificate of delivery documents the assignment of such right to the transferee. See id.

## III. Contentions of the Parties

### A. Cargill's Contentions

Cargill contends that Customs, in HQ 228706, improperly denied its substitution unused drawback claim. See Pl.'s Mem. P. & A. Supp. Mot. Summ. J. ("Cargill's Mem.") at 12-21. Cargill asserts that HQ 228706 denied its drawback claim because the Minute Maid CD did not contain an endorsement required by 19 C.F.R. § 191.34 (1998), indicating that the certificate of delivery was prepared

pursuant to 19 U.S.C. § 1313(j)(2). See id. at 12; see also Pl.'s Mem. P. & A. Opp'n Def.'s Cross-Mot. Summ. J. ("Cargill's Reply") at 2. Cargill maintains that its drawback claim was not denied because of a failure to establish the chain of custody of the merchandise cited in the certificate of delivery. See Cargill's Reply at 6-7. Cargill argues that the requirement imposed by 19 C.F.R. § 191.34 is inapplicable because the regulation became effective on April 6, 1998, after Cargill filed the drawback claim presently at issue. See Cargill's Mem. at 12. Cargill maintains that "[i]t is well established that a substantive regulatory requirement of general applicability cannot be imposed until rulemaking proceedings have been conducted and completed pursuant to the Administrative Procedure Act . . . ." Id. at 13. The 1998 regulation does not state that it will be applied retroactively and does not provide for its retroactive application. See id. at 14. The endorsement required by the 1998 regulation, Cargill argues, cannot be required of a certificate of delivery issued prior to the promulgation of the regulation. See id. Cargill further asserts that HQ 228706 is not entitled to any deference because "it does not take into consideration the fact that the Minute Maid CD and the drawback claim at bar were filed in 1997, nearly a year before . . . 19 C.F.R. § 191.34 entered into force." Id. at 20 (emphasis omitted).

Cargill maintains that its drawback claim must be assessed under the law that existed when it was filed and when the underlying documents were issued. Here, the Minute Maid CD and the drawback claim were events completed before 19 C.F.R. § 191.34 was enacted. See id. at 17-18. Cargill argues that imposing the endorsement requirement of 19 C.F.R. § 191.34 retroactively would deprive it of the benefit of the claim it had filed before the new regulation was enacted. See id. at 18. Cargill also notes that in a response to San Francisco Customs' inquiry, Minute Maid provided information and documents indicating that the certificate of delivery was provided to Cargill pursuant to 19 U.S.C. § 1313(j)(2). See id. at 18-19. Accordingly, Customs was aware that the merchandise Minute Maid delivered was commercially interchangeable with the merchandise in the designated import entries listed on the certificate of delivery. See id.

In the alternative, Cargill argues that if 19 C.F.R. § 191.34 did apply to its drawback claim, then Cargill satisfied Customs' regulations by submitting an application for "perfection" in accordance with 19 C.F.R. § 191.52(b)(4) (2002). See Cargill's Mem. at 21-25. Cargill submitted an amended certificate of delivery from Minute Maid which was identical to the previously submitted certificate except that it also contained the endorsement required by 19 C.F.R. § 191.34. See id. at 21. Cargill maintains

that the amended certificate of delivery did not constitute an amendment of the claim. See id. at 22. Rather, the amended certificate was "a timely perfection which may properly be submitted beyond the time for filing the [drawback] claim itself." Id. at 22.

Cargill also argues that it was not required to provide Customs with "intermediate certificates of delivery documenting the entire chain of custody of the imported merchandise designated in the claim." Cargill's Reply at 9. Customs never requested that Cargill provide any certificates of delivery other than the Minute Maid CD. See id. at 9. Cargill contends that a certificate of delivery does not necessarily demonstrate the entire chain of custody because "[i]f the issuer of the [certificate of delivery] received the imported merchandise from another person who paid the duty, it is not required to provide copies of earlier [certificates of delivery]." Id. at 11. Moreover, a certificate of delivery does not necessarily document the transfer of the imported merchandise. See id. at 12. Under 19 U.S.C. § 1313(j)(2), the merchandise transferred may be commercially interchangeable with the imported merchandise designated on the certificate. See id.

Cargill asserts that any issues that arise from the Minute Maid CD are "the government's own making, and results from Customs' shoddy administration of the drawback statute." Cargill's Reply at

14. Congress amended the substitution unused merchandise drawback statute, effective December 8, 1993, yet Customs failed to amend its regulations to conform with those changes until more than four years later. See id. Under the applicable regulations, Cargill asserts that it was not required to file the Minute Maid CD as part of its drawback claim, but rather it was furnished by Cargill upon a request by Customs. See id. at 16-17. Accordingly, Cargill contends that it adhered to the 1997 regulations and cooperated with Customs once its drawback claim had been submitted. See id.

### B.   Customs' Contentions

Customs first responds that HQ 228706 is entitled to deference because it was consistent with the drawback statute and Customs' regulations. See Customs' Mem. at 7. Customs also contends that Cargill's assertion, that its drawback claim was denied because the Minute Maid CD lacked an endorsement, pursuant to 19 C.F.R. § 191.34 (1998), is irrelevant. See id. at 9-10. Rather, Customs argues that the drawback claim "was denied because the certificate of delivery misrepresented the merchandise that was delivered to Cargill by Minute Maid." Id. at 10. Accordingly, Customs maintains that Cargill's drawback claim with respect to 3,733,072 of FCOJM was properly denied. See id. at 10-13.

Customs asserts that under 19 U.S.C. § 1313(j)(2), Cargill was required to have "a certificate of delivery documenting the

transfer of either the imported duty-paid merchandise or the commercially interchangeable merchandise." Def.'s Reply Pl.'s Mem. Opp'n Def.'s Cross-Mot. Summ. J. ("Customs' Reply") at 3 (emphasis omitted). Customs maintains that the Minute Maid CD certified that the FCOJM imported in 1994 was delivered to Cargill in 1997, although the merchandise which was actually delivered to Cargill was imported in 1997. See Customs' Mem. at 10. Customs argues that the central purpose of the certificate of delivery "is to demonstrate the chain of custody of the merchandise identified thereunder." Id. The regulations, according to Customs, have "consistently explained that the certificate of delivery must describe the imported merchandise and trace its custody from the importer to the manufacturer, including all intermediate transfers." Id. at 6. Customs argues that Cargill failed to submit a certificate of delivery that properly documented the chain of custody. See id. Furthermore, Customs maintains that pursuant to 19 U.S.C. § 1313(j)(2), "the merchandise identified in the certificate of delivery was required to be exported or destroyed." Customs' Reply at 4. Here, the merchandise Cargill exported was not the merchandise received from Minute Maid; rather, it was other domestically produced FCOJM. See id. Accordingly, Customs contends that Cargill's drawback claim was properly denied because the certificate of delivery was fatally inaccurate. See id. at 4-7.

**III. HQ 228706 is Not Entitled to _Skidmore_ Respect**

As a preliminary matter, the Court finds that HQ 228706 is not entitled to _Skidmore_ respect.  In _Skidmore v. Swift & Co.,_ 323 U.S. 134, 140 (1944), the Supreme Court set forth the factors a reviewing court is to consider in determining how much weight an agency's decision is to be afforded.  The amount of respect an agency's decision is afforded by a court "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking power to control."  _Id._  The power to persuade of each Customs' ruling may vary depending on the _Skidmore_ factors articulated in _United States v. Mead_, 533 U.S. 218 (2001).  _See Structural Indus., Inc. v. United States_, 356 F.3d 1366, 1370 (Fed. Cir. 2004).

Applying these factors to the case at bar, the Court finds that HQ 228706 fails to exhibit a thorough, well reasoned and consistent pronouncement of the Customs laws and regulations applicable at the time Cargill submitted its drawback claim.  Specifically, HQ 228706 fails to properly apply the regulations applicable at the time Cargill filed its drawback claim.  The analysis Customs offered in HQ 228706 solely applies Customs regulations which were enacted subsequent to Cargill's submission

of the claim at issue. See Cargill's Facts Ex. B. The 1998 regulations, however, do not indicate that they were to be applied retroactively. See 19 C.F.R. pt. 191 (1998). Customs argues that "inasmuch as Cargill's drawback claim was not denied because of a lack of 'endorsement,' [which the 1998 regulations require,] these arguments are irrelevant . . . ." Customs' Mem. at 9-10. The Court, however, finds the denial of Cargill's drawback claim, because it lacked an endorsement pursuant to 19 C.F.R. § 191.34, highly relevant. HQ 228706 fails to demonstrate how the law cited applies to Cargill's drawback claim, which was filed before the regulations took effect. The 1998 regulations took effect April 6, 1998, and, therefore, are inapplicable to Cargill's drawback claim, which was filed on May 10, 1997. See Compl. ¶ 6.

Customs' regulations will not be given retroactive effect unless such treatment is called for in the language of the regulation. See Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."). The general rule disfavoring retroactivity applies to administrative regulations. See Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 24 CIT 485, 492, 102 F. Supp. 2d 486, 492, 493 (2000). The Court recognizes that

Customs has specialized experience which can aid the Court in its review of issue at hand, see Mead, 533 U.S. at 234, and that such rulings are entitled to "a respect proportional to [their] 'power to persuade.'" Mead, 533 U.S. at 235 (quoting Skidmore, 323 U.S. at 140). In the case at bar, the Court finds that HQ 228706 lacks those qualities which would give it the power to persuade. The Court has an independent responsibility to apply the law when rulings, such as HQ 228706, lack thoroughness of consideration and valid reasoning. Accordingly, the Court finds that, contrary to Customs' contention, HQ 228706 is not entitled to Skidmore respect.

**IV. Customs Improperly Denied Cargill's Substitution Unused Merchandise Drawback Claim**

The Court finds that Cargill's substitution unused drawback claim was improperly denied by Customs. Pursuant to 19 U.S.C. § 1313(j)(2)(C), a drawback claimant must have imported merchandise or have received from the importer, who paid any duty on the imported merchandise, a certificate of delivery transferring to the claimant the imported merchandise, commercially interchangeable merchandise, or any combination thereof. The transferred merchandise is treated as the imported merchandise and, upon exportation or destruction of such merchandise, drawback shall be refunded. See id. To qualify for drawback, Cargill was required to receive from Minute Maid a certificate of delivery documenting

the transfer of the merchandise, commercially interchangeable merchandise or a combination thereof. See id. Furthermore, Cargill was required under the 1997 regulations to submit a certificate of delivery recording the transfer of merchandise between Minute Maid and Cargill. See 19 C.F.R. § 191.141(b). The Court finds that Cargill fulfilled its statutory and regulatory obligations and, therefore, is entitled to substitution unused merchandise drawback.

Customs concedes that Cargill followed its statutory and regulatory obligations to timely submit a certificate of delivery with its drawback claim. See Customs' Mem. at 10. Customs argues, however, that Cargill's drawback claim was fundamentally flawed because the certificate "misrepresented the merchandise that was delivered to Cargill by Minute Maid." Id. Customs maintains that 19 U.S.C. § 1313(j)(2)(C)(ii)(II) required the Minute Maid CD to document the transfer of either the imported duty-paid merchandise or the commercially interchangeable merchandise. See Customs' Reply at 3. The Court finds, however, that Customs arguments are flawed and without merit. The Minute Maid CD identifies FCOJM imported in 1994 under Consumption Entry No. 032-0197172-2 by the parent company of Minute Maid. See Customs' Mem. Ex. 2. The merchandise transferred by Minute Maid to Cargill was commercially interchangeable merchandise that had been imported in 1997. See

id.  The statute provides that a party claiming drawback pursuant to 19 U.S.C. § 1313(j)(2) does not have to receive, from the issuer of the certificate of delivery, the merchandise identified in the certificate of delivery.  Rather, a claimant may receive commercially interchangeable merchandise or a combination of the imported merchandise and commercially interchangeable merchandise. See 19 U.S.C. § 1313(j)(2).

The certificate of delivery reflects the transfer of imported merchandise or commercially interchangeable merchandise or a combination thereof.  See id.  Under the 1997 regulations, the certificate of delivery had to identify the imported merchandise because the commercially interchangeable merchandise did not have drawback rights independently of the imported merchandise. Consequently, failing to identify the imported merchandise on the certificate of delivery would cause Customs to reject a drawback claim because there would be no indication from which merchandise drawback rights arose.  If Cargill's drawback claim solely identified the 1997 merchandise it received from Minute Maid, then Cargill would not have been entitled to unused substitution merchandise drawback.  The merchandise imported in 1994 and not in 1997 had drawback rights attached thereto.  Consequently, Cargill could not have pursued a drawback claim with respect to the 1997 imported merchandise.  If the certificate of delivery had not

identified the 1994 merchandise, then Customs would have denied drawback. The Court finds that the 1997 regulations and 19 U.S.C. § 1313(j)(2) did not require Cargill to identify the 1997 merchandise on the Minute Maid CD.

The present case exemplifies the situation whereby Customs failed to update its regulations subsequent to the amendment of a statute. In 1993, 19 U.S.C. § 1313 was amended to allow for substitution drawback. Customs, however, failed to amend its regulations to conform with the 1993 statutory amendments until after Cargill's drawback claim was filed with Customs. See 19 C.F.R. § 191.34 (1998). The regulations in place at the time of Cargill's claim did not require Cargill to identify the commercially interchangeable merchandise which had been substituted for the imported merchandise.[2] The statute required Cargill to receive from the person who paid duties on the imported merchandise a certificate of delivery for the imported merchandise or commercially interchangeable merchandise. Here, the Court finds

---

[2] The Court notes that Customs amended CF 331 in 2001, subsequent to Cargill's drawback claim, to allow the issuer of the certificate of delivery to indicate that commercially interchangeable merchandise and not the imported merchandise had been delivered to another party. See Cargill's Reply Ex. B. Prior to the amended CF 331, the issuer of the certificate of delivery was unable to indicate that, pursuant to 19 U.S.C. § 1313)j)(2), the merchandise delivered was not the imported, duty-paid merchandise but rather commercially interchangeable merchandise. See Customs' Mem. Ex 2.

that the certificate of delivery was valid because it identified the imported merchandise which formed the basis of Cargill's drawback claim.

Customs argues that the Minute Maid CD misrepresented that the merchandise transferred to Cargill was commercially interchangeable merchandise imported in 1997 and not the merchandise imported in 1994. See Customs' Mem. at 10. A drawback claim, however, does not solely consist of a certificate of delivery. Rather, a "drawback claim" consists of "the drawback entry and related documents required by [the] regulations which together constitute the request for drawback payment." 19 C.F.R. § 191.2(i). Here, Customs may not convincingly assert that it did not know that the merchandise delivered to Cargill was commercially interchangeable merchandise imported in 1997. On August 31, 1999, Customs requested information from Minute Maid relating to the Minute Maid CD. See Customs' Mem. Ex. 1. In its response dated November 24, 1999, Minute Maid provided Customs with the requested information and documents. See Customs' Mem. Ex. 2. The documents indicate that the FCOJM delivered to Cargill was not merchandise imported in 1994 but rather was commercially interchangeable merchandise imported in 1997. See id. Accordingly, Customs knew that the merchandise identified on the Minute Maid CD was commercially interchangeable merchandise and not the 1994 FCOJM. The Court

finds that Customs improperly relied on the 1998 regulations in denying Cargill's drawback claim and that the Minute Maid CD was not improperly completed. Consequently, Cargill is entitled to duty drawback on 3,733,072 SSL of FCOJM imported under the cover of Consumption Entry No. 032-0197172-2.

## CONCLUSION

The Court finds that Customs improperly denied Cargill's drawback claim with respect to 3,733,072 SSL of FCOJM. HQ 228706 is not entitled to <u>Skidmore</u> respect because it lacks the power to persuade. The Court finds that the neither the statute nor Customs regulations required Cargill to identify the 1997 merchandise on the Minute Maid CD because such merchandise did not form the basis for its claim. Accordingly, the Court concludes that Cargill's drawback claim was not fatally inaccurate and should have been granted. Cargill's motion for summary judgment is granted and Customs' cross-motion for summary judgement is denied.

 /s/ Nicholas Tsoucalas
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated: August 23, 2005
New York, New York